# PLEASANTS *v.* FAY.

EQUITY PRACTICE; EQUITY; EQUITABLE LIENS; SUBROGATION;
VENDORS' LIENS.

1. A demurrer for want of equity will not be sustained unless the court is satisfied upon the facts alleged and admitted to be true, that no discovery or proof properly called for by the allegations of the bill, can make the subject-matter of the suit a proper case for equitable relief.

2. Where a subsequent mortgage encumbrancer or purchaser from the original owner of real estate, upon which there is a prior lien, is required to take up such prior lien or have it discharged for the benefit and protection of his subsequent mortgage lien, he is entitled to be substituted in the place and stead of the prior lienholder, as against third parties dealing with the estate with notice.

3. Where a vendor conveys an estate to a third person who, in consideration of the conveyance, and in terms, assumes payment of a first lien upon the property and pays a second lien, and after the conveyance has been made it is discovered that the vendor before the conveyance had satisfied the first lien, but he and the vendee had overlooked his having done so, the vendor is entitled to a vendor's lien against the estate for the sum expended by him in satisfying such first lien.

4. In such a case, even if there were no special agreement in the deed of conveyance by which the vendee assumed payment of the lien, the vendor would have a vendor's lien for the balance of the consideration due, as it would be against conscience to allow the vendee to retain the property and not pay the full consideration therefor.

5. The usual course of enforcing a vendor's lien in equity is by a sale of the property to which it is attached.

No. 807. Submitted June 8, 1898. Decided October 3, 1898.

HEARING on an appeal by the complainant from a decree sustaining a demurrer to and dismissing a bill to have a vendor's lien declared and enforced against certain real estate. *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. James W. Greer* and *Mr. Walter D. Davidge, Jr.,* for the appellant.

*Mr. Samuel A. Putman* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The bill in this case was filed by the present appellant, Richard H. Pleasants, against the appellee, John C. Fay, to have a lien declared and enforced against certain real estate purchased of the appellant as trustee and conveyed to the appellee for a consideration expressed in the deed, which, as it is alleged, has not been paid by the appellee. The original bill was amended, and it is the amended bill only that is now before us. The appellee demurred to the amended bill, and the court below, upon hearing, sustained the demurrer and dismissed the bill, and from that order this appeal is taken.

The bill alleges that in May, 1894, William A. Pate, being largely indebted to Henry Keidel & Co., for the purpose of providing for the payment of such indebtedness, jointly with his wife, made a deed of a certain lot or piece of ground in the City of Washington, District of Columbia, being part of original Lot in the plan of said city, No. 19, in Square No. 964, to the appellant, his heirs and assigns, in trust, to hold such lot and premises for the use of the said Keidel, his heirs and assigns, with power in the appellant, at any time, and from time to time, to sell said lot and premises, or any part thereof, at public sale, and to convey the same, in fee simple, or by way of mortgage or deed of trust, or otherwise, as the appellant might deem for the interest and advantage of the said Keidel, and the proceeds arising from the disposition of said property to be first applied to the payment of said Keidel's claim. That the said parcel of ground and premises were conveyed to the appellant subject to a lien or charge created by a certain prior deed of trust from Pate and wife to Frederick Benjamin and B. Frank Saul,

trustees, to secure the joint and several note of Pate and wife for $1,000, dated September 1, 1893, payable to the order of certain Newton A. Strait and Mary E. Hartwell, one year after date, with interest, etc. The conveyances in trust, referred to, are made exhibits to the bill.

It is further alleged, that some time after the conveyance by Pate to the appellant, the former, being a merchant in the District, made a deed of assignment to the appellee for the benefit of his, the said Pate's, creditors; and that about the middle of February, 1895, the appellee made an offer to the appellant that he, the said appellee, would personally take the land and premises that had been conveyed to the appellant in trust, that is to say, the equity of redemption therein, at a valuation of $800, if the appellant should fail to sell the same at a higher figure, and credit that sum on account of Pate's debt to Keidel, and that Keidel would accept twenty-five per cent. on the balance of his claim against Pate. That the appellee then personally agreed with the appellant, if such composition should be effected, to take the land and premises off the hands of the appellant, that is to say, the equitable interest therein, at $800, interest and expenses (including all taxes paid thereon and interest on the $1,000 trust), by March 9, 1896, if, in the meantime, appellant failed to sell the same at a higher figure; and the appellee furnished security to the appellant that he would faithfully observe and fulfill his said contract and undertaking in that behalf.

It is then alleged, that thereafter, on or about the 17th of March, 1895, the holders of the note for the $1,000 secured by the deed of trust to Benjamin and Saul, demanded payment of the said note, and the same was paid and canceled on April 8, 1895, and the said deed of trust was released, by a deed of release, executed by the trustees, on the 9th of April, 1895, to the appellant in his individual name and capacity, and that the same was by mistake inad-

vertently and unintentionally recorded on the 11th of April, 1895. A copy of the release is exhibited with the bill.

The appellant then alleges that he was not able to sell the property for a higher price than $800, and that on or about March 9, 1896, he requested the appellee to purchase the same from him in accordance with the aforesaid agreement; and that, after many demands and much delay, the said property was conveyed to the appellee by the appellant for the sum of $1,900, by deed dated March 17, 1896—the said Keidel joining in said deed to the appellee; and which said deed expressed upon its face that it was made "subject to a certain deed of trust to Frederick Benjamin and B. Frank Saul, dated September 1, 1893, and recorded in Liber 1848, folio 266, of the land records, etc., made to secure an indebtedness of one thousand dollars." It is alleged that at the time said deed was delivered to the appellee the appellant surrendered to the appellee the aforesaid agreement of the appellee to purchase said property. It is further alleged, that the consideration expressed in the deed of $1,900, consisted partly of the said sum of $1,000, supposed to be secured by the deed of trust released, and the $800, interest and expenses (including all taxes paid and interest on the $1,000 trust), agreed by the appellee to be by him paid the appellant in accordance with his said agreement. A copy of the deed from the appellant to the appellee, herein referred to, is filed as an exhibit with the bill, and that deed purports to be a conveyance of an absolute fee simple estate in the property described, with a covenant of general warranty, and which deed professes to have been made for and in consideration of $1,900 to the grantors in hand paid by the grantee; and it is expressly made subject to the deed of trust to secure the payment of the note for $1,000, though that deed of trust had been released or transferred to the appellant, and the deed of release recorded, nearly a year previously.

And finally, it is alleged that it was the fully understood

and expressed intention of the appellant and of the appellee that the said property should be conveyed by the appellant to the appellee for the said sum of $800, interest and expenses (including all taxes paid thereon and interest on the $1,000 trust), and that the property should be subject to the aforesaid lien for $1,000, with interest from the 9th of March, 1896, and that the appellee should not be personally liable therefor; and at the time of said transfer the fact of the release of said deed of trust in the previous spring had entirely escaped the memory of the appellant, and the same was supposed by both the appellant and the appellee to be a subsisting and valid lien on said real estate, and was as such intended to be, and was, considered as part of the purchase money expressed in the deed to the appellee. That some time after the delivery of the deed to the appellee, the appellant discovered that the said release was of record, and he immediately communicated with the appellee in relation thereto, and at many and divers times the matter was discussed between them, both conceding and agreeing that the appellee was not nor never had been personally liable for the payment of the said $1,000, but that the same was to be a lien against the said real estate solely; the appellee, however, although recognizing and acknowledging said lien, persistently failed to enter into any arrangement whereby the said $1,000 would be made to appear a lien of record against said land, but suggested to the appellant that he, the appellant, should sell said property and satisfy said lien.

The prayer of the bill is, that the appellee be required to answer, and that he be required to produce the agreement of purchase surrendered to him upon the making of the deed to him by the appellant; that the appellant may be decreed to have a lien upon the said land and premises for the $1,000 paid upon obtaining the release of the deed of trust as security therefor, with interest; that said property be decreed to be sold, and the proceeds of sale be applied, in the first place, to the discharge of the original debt of $1,000,

13 Ct. App.—17

with interest and costs; and for such other relief as the case may require.

The case is presented on the facts as they are alleged in the bill, and hence we have set forth the allegations fully. The defendant by his demurrer simply denies in form and substance the plaintiff's right to have his case considered by a court of equity, and in order to present that question the demurrer is taken to admit all the allegations of fact that are properly pleaded.

In view of the facts alleged, we think the demurrer should have been overruled, and the defendant required to answer. It is a settled principle that a demurrer for want of equity can not be sustained unless the court is satisfied, upon the facts alleged and admitted to be true, that no discovery or proof properly called for by the allegations of the bill, can make the subject-matter of the suit a proper case for equitable relief. *Bleeker* v. *Bingham,* 3 Paige, 246.

Here it is alleged that it was distinctly agreed by the parties that the property was to be conveyed to the appellee subject to the lien or charge of the $1,000, with interest, secured by the deed of trust to Benjamin and Saul; and it is so expressed in the deed to the appellee. He has not paid the $1,000, with interest, though the original debt has been paid or taken up by the trustee for the benefit and protection of the subsequent and subordinate trust, created for the benefit of Keidel. Whether by mistake or inadvertence of one or both of the parties, it is clear the appellee holds the deed conveying a fee simple title to the property, for the professed consideration of $1,900, when in fact he has not paid the $1,000, with interest, though it has been paid for him, and he has obtained a legal title to the property conveyed, instead of a mere equity of redemption therein, to which he would have been entitled, according to the terms of the original contract of purchase from the appellant. By accepting the deed from the appellant, subject to the charge and reservation upon its face, in respect to the prior encum-

brance, the appellee agreed to pay for the property $1,900, of which sum the $1,000, the prior charge, formed a part, and though the prior deed of trust had been released, it enured to the benefit of the estate conveyed to the appellee, and therefore he agreed to pay the $1,000 as part of the purchase money of $1,900, expressed in the deed. The appellant, as trustee.for Keidel, stood in the position of a subsequent encumbrancer or purchaser from Pate, and having been required to take up the prior lien or have it discharged for the benefit and protection of his subsequent mortgage lien, he is entitled to be substituted in the place and stead of the prior lienholder, as against third parties dealing with the estate with notice. 2 Story Eq. Juris., Sec. 1227; *Manlove* v. *Bale*, 2 Vern. 84. The appellant, therefore, was entitled to make the amount paid in discharge of the prior encumbrance a part of the consideration for the conveyance of the absolute fee simple estate conveyed to the appellee, though there was eror or mistake in assuming that the prior deed of trust was still subsisting and in force.

But, apart from the effect to be given the agreement contained in the deed to the appellee, and putting aside the *special agreement* to subject the property conveyed to the lien of the prior deed of trust, it would be against conscience to allow the appellee to retain the property and not to pay the full consideration therefor. In such case the ordinary vendor's lien would attach. In Section 1219 of Story's Equity Jurisprudence the author says that the principle upon which courts of equity have proceeded in establishing the vendor's lien, in the nature of a trust, is, that a person, who has gotten the estate of another, ought not, in conscience, as between them, to be allowed to keep it, and not to pay the full consideration money. This principle has been acted upon by courts of equity for more than two centuries past, and is long since the established doctrine upon the subject. Thus, in the case of *Chapman* v. *Tanner*, 1 Vern. 268 (in 1684), where the question of the allowance of a ven-

dor's lien in a case of bankruptcy was involved, the Lord Keeper said: " In this case there is a natural equity, that the land should stand charged with so much of the purchase money as was not paid, and that, without any *special agreement for that purpose.*" This is the settled doctrine that prevails in the English chancery and in nearly all of the American States. It is so laid down in the case of *Hughes* v. *Kearney*, 1 Sch. & Lefr. 132, 135, and in the leading case of *Mackreth* v. *Symmons*, 15 Ves. 329. In this latter case, where the whole subject is most elaborately considered, Lord Chancellor Eldon said that the settled doctrine was, unless there were special circumstances to preclude it, that, " where the vendor conveys, without more, though the consideration is upon the face of the instrument expressed to be paid, and by a receipt endorsed upon the back, if it is the simple case of a conveyance, the money, or part of it, not being paid, as between the vendor and the vendee, and persons claiming as volunteers, upon the doctrine of this court, which, when it is settled, has the effect of contract, though perhaps no actual contract has taken place, a lien shall prevail; in the one case, for the whole consideration ; in the other, for that part of the money which was not paid." This is the principle of that leading case, and in the notes to which in 1 Lead. Cases in Eq. 336 to 375, may be found a full collection of the decisions upon the subject.

The doctrine of these cases has been fully maintained by the Supreme Court of the United States, in the case of *Chilton* v. *Braiden*, 2 Black, 458. That case was taken up from the circuit court for this District, and hence the decision enunciates the law of this District. In that case the court said, speaking by Mr. Justice Greer: " When one person has got the estate of another, he ought not, in conscience, to be allowed to keep it without paying the consideration. It is on this principle that courts of equity proceed as between vendor and vendee. The purchase money is treated as a lien on the land sold, where the

vendor has taken no separate security. In the present case, this lien has not been defeated by alienation to a *bona fide* purchaser, or any subsequent lien of creditors. The issue taken in the answer concerning the respondent's ability to pay out of her separate estate, is wholly immaterial, except to give probability to the allegation that she had paid the consideration."

The usual course of enforcing a lien in equity, if not discharged, is by a sale of the property to which it is attached; and this is the course of procedure for the enforcement of a vendor's lien, such as that charged to exist in this case. 2 Story, Eq. Juris., Sec. 1217, and the cases there cited.

It follows that the decree sustaining the demurrer and dismissing the bill must be reversed, and the cause be remanded that further proceedings may be taken not inconsistent with the foregoing opinion; and it is so ordered.

*Decree reversed and cause remanded.*