## CIFFO *v.* CIFFO.

EVIDENCE; HUSBAND AND WIFE; RESULTING TRUST; PRESUMPTIONS.

1. In a suit by a husband against his wife to establish a resulting trust in his favor in real estate in her name, on the ground that he furnished the purchase price, self-serving declarations made by him after the purchase of the property are inadmissible.

2. Where a husband furnishes the purchase price of real estate, and the title is conveyed to his wife, prima facie there is no resulting trust in favor of the husband, but the purchase and conveyance will be deemed a gift to or settlement upon the wife because of his legal obligation to make provision for her. This is an exception to the rule that such a trust will arise by implication of law where the purchase money is advanced by one person and the title taken in the name of another. (Following *McCartney* v. *Fletcher*, 11 App. D. C. 1.)

3. In a suit by a husband against his wife to establish a resulting trust in his favor in real estate which he claims to have purchased and to have had conveyed to her, casual statements by either party as to the ownership of the property are of little probative value. (Citing *Meech* v. *Smithsonian Inst.* 8 App. D. C. 490, s. c. 169 U. S. 398.)

4. Long continued retention by a wife of the legal title to real estate, acquiesced in by the husband, raises a presumption of an intention on his part that she should have the beneficial ownership as well.

5. Where in a suit by a husband against his wife to establish a resulting

trust in his favor in real estate which he claims to have bought with his money, it appeared that from a small investment in real estate, by frugality and business tact, through a series of sales and reinvestments, the estate in question was finally acquired; that the parties were foreigners, the husband claiming to be so illiterate as to be unable to sign checks and deeds, and that that was the reason he had the title to the various properties from time to time vested in his wife; that the husband only testified to furnishing the small amount of money required to make the original purchase, while other money paid on the properties subsequently acquired came from a business conducted by both parties and which each claimed to be the owner of; that casual statements were made from time to time by each party as to the ownership of the various properties, none of which was convincing, and that for more than ten years, extending through the various purchases and sales of the property, the husband acquiesced in the wife holding the title in her name,—it was *held* that the evidence was insufficient to rebut the presumption of a settlement on the wife, and failed to show a resulting trust in the husband.

No. 2814.   Submitted October 14, 1915.   Decided December 6, 1915.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia, sitting as an equity court, establishing a resulting trust in certain real estate in favor of the plaintiff.                                   *Reversed.*

The COURT in the opinion stated the facts as follows:

Appellee, Antonio Ciffo, filed a bill in equity praying that a resulting trust be declared in his favor against appellant, Marie Ciffo, in certain real estate situate in this District. From a decree in favor of plaintiff, defendant has appealed.

It appears that plaintiff and defendant, husband and wife, came to this country from Italy about twenty-five years ago, and settled in the State of Pennsylvania, where real estate was acquired, which was placed in the name of defendant. This property was sold, and other real estate purchased and placed in defendant's name. The first property was purchased in Latrobe, Pennsylvania, in 1901, for the sum of $2,200, and

was thereafter sold for $2,300; and the second piece of property was purchased in March, 1905, for the sum of $14,000, $2,000 of which was paid in cash, and the balance was secured by mortgage on the property. This property was sold in February, 1910, for $20,000. Shortly thereafter, defendant brought the proceeds to Washington, and purchased in her own name the property here in question.

Plaintiff averred in his amended bill "that, owing to the illiteracy of the plaintiff, and his ignorance of the English language, and his inability to either read or write it, he and the defendant entered into an agreement by which, if he purchased any real estate and furnished the purchase money for the purchase of any real estate desired for the purposes of their business or residence, that the title to the said real estate was to be taken in her name as trustee for the benefit of the plaintiff, on account of the plaintiff's illiteracy, and because he, the plaintiff, was unable to read or write, or make checks and conveyances, and that such money as he could save from his business was to be applied to the purchase of real estate, and pending such purchase the money was to be deposited in the bank in her name, as she could write checks and he could not. And the said defendant agreed to take title to said property as said trustee, to deposit money in the bank for the plaintiff's benefit, and to make such encumbrances, conveyances, and disposition of said property as he should desire and wish her to do." This averment was made under oath.

Thereafter, and not under oath, this averment of the amended bill was amended to read as follows: "That owing to the illiteracy of the plaintiff, and his ignorance of the English language, and because of his inability to read and write, or sign checks or conveyances, the plaintiff deposited the money which he earned in bank to the credit of the defendant, as she could write checks, and he could not. That on several occasions, during his residence at Latrobe, Pennsylvania, when the plaintiff had accumulated sufficient money for the purpose, he purchased various pieces of real estate, and furnished and paid the purchase money for the same, and caused the title to the

property to be taken in the name of the defendant, which was
done on account of the fact that plaintiff was at the time un-
able to read or write and to sign his name, except by a cross
mark, to any deed conveying the said real estate, and that the
defendant on the several occasions when real estate was pur-
chased by the plaintiff in the State of Pennsylvania, and title
was taken in the defendant's name, at the request of the plain-
tiff, made deeds and conveyed the property to the parties to
whom the plaintiff had sold the same."

All the testimony that plaintiff offers in support of these
averments is found in his own testimony in chief, where he
testified "that the money for the purchase of the first piece of
property in Latrobe came from witness's own working, but
witness does not know who actually paid for the property;
that the property was bought with the money that witness
earned, and witness allowed his wife to buy it for him because
he could not read or write, and his thought was always to
work; that witness's wife attended to all of his business af-
fairs, because she was at home and witness was out working;
that witness brought the money home and gave it to his wife;
that the business in Latrobe was carried on in witness's name;
that it was witness's business; that his wife had no part in it."

Defendant, after testifying that the property in Pennsylvania
was purchased with her money, and that the business there
conducted was her business, and not plaintiff's, testified "that
she had no agreement or understanding of any kind at any
time that any of this property was being purchased in her
name for her husband as trustee, or otherwise; that there was
no such understanding; that she never heard of any such claim
until he filed his first suit in Washington, three years ago, in
1912." In that suit plaintiff set up a claim to one half of the
property in controversy, a claim totally inconsistent with his
present contention.

*Mr. W. Gwynn Gardiner, Mr. L. L. Hamby,* and *Mr. Blaine
Coppinger* for the appellant.

*Mr Charles F. Carusi* and *Mr. Edward Mascolo* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

A number of depositions of persons living in Latrobe were taken by plaintiff. Some of the witnesses testified to statements of plaintiff to the effect that he bought the property and owned the business which they were conducting. Much of this evidence was incompetent, in that it constituted declarations of the plaintiff in interest after the purchase was made. "Of course, declarations made by the husband or father after the purchase are incompetent to control the effect of the prior transaction. But such declarations may be used by the wife or child against the purchaser to show that it was a settlement, and not a trust. And the after declarations of the nominal grantee may be used against him, but not in his favor. But the declarations must be direct and certain, and where possible should be corroborated by other facts and circumstances; for courts will not act upon mere declarations, if they are conflicting, vague, or inconsistent with themselves." 1 Perry, Trusts, 6th ed. sec. 147.

Taking up the testimony of certain witnesses in relation to after declarations of defendant, against interest, one witness testified to seeing plaintiff give defendant the money with which to go to Pittsburg to purchase the second property, and, when plaintiff suggested that he had better go along, defendant replied, "You need not come; I am buying the property for you." This witness is not even corroborated by the evidence of plaintiff himself, as no claim is made in his testimony that he furnished the money to purchase the second property. Another witness testified to hearing defendant casually remark that her "husband, in order to acquire this property, has worked a great deal, and he economized so hard to acquire the property that he bought the cheapest kind of bread, and ate it when it was seven or eight days old." The same witness also testified to a statement by defendant "that she was

going to pay the interest on the mortgage because her husband could not read or write, and that she must attend to those things for him." Another witness testified that, while he had a portion of the property rented, he tried to chase plaintiff's boy from the premises, when defendant remarked that he "had no right to chase the boy away because the property was still owned by his father." Much of this evidence is discredited not only by the testimony of defendant, but by the circumstances of the case.

A number of other witnesses—bankers, business men, and others—were examined as to their understanding that the business belonged to plaintiff. This testimony is of little importance; since we are disposed to consider the case from the standpoint of plaintiff's alleged attitude toward defendant in relation to the title of the real estate.

Viewing plaintiff's case in the most favorable light, we have him furnishing the money with which to purchase the first piece of real estate. It will be remembered that this is all the purchase money he testified to having furnished. From this small investment, by the frugality and business tact of defendant, through a series of sales and reinvestments, a valuable estate was accumulated. It is now sought to have a resulting trust declared in favor of plaintiff to the whole estate. · His claim is not limited to the small amount of purchase money which he testifies he originally furnished. In the verified amended bill, plaintiff set out an agreement creating an express trust, which brought him dangerously near to the statute of frauds. The unverified amendment is a better worded document upon which to construct a resulting trust, in that it merely states that plaintiff, because of his illiteracy, furnished the money to purchase the real estate, "and caused the title to the property to be taken in the name of the defendant."

There is no contention by anyone that the deeds on their face disclose any evidence of a trust, or that there is any writing in existence which declares a trust, as required by the statute of frauds. In the amended bill, plaintiff seems to have intended to set up and impress upon the deeds an express parol trust,

and in the amendment thereof he has attempted to lay the basis for the establishment by parol evidence of a resulting trust. A parol agreement by which a resulting trust arises, affecting the title to real estate, is excepted in the statute of frauds of most States and of this District. From this it follows "that a party setting up a resulting trust may prove by parol the agreements under which the estate was purchased, and he may prove by parol the actual payment of the purchase money by himself, or in his behalf, although the deed states it to have been paid by the grantee in the conveyance." 1 Perry, Trusts, 6th ed. sec. 137.

Resulting trusts arise by implication of law, where the purchase money is advanced by one person and the title is taken in the name of another; or "where a conveyance is made in trust declared only as to part and the residue remains undisposed of, nothing being said or declared respecting such undisposed-of part;" or where fraud is shown. No pretense of fraud is made in this case; hence, we are remanded to the case of one person furnishing the purchase price of real estate, and having the title placed in the name of another. In respect of this class of resulting trusts arising between husband and wife, Chief Justice Alvey, in *McCartney* v. *Fletcher,* 11 App. D. C. 1, said: "An exception occurs where the purchase is made and the purchase money paid by a husband or father, and the conveyance is taken in the name of the wife or child. In such cases there is, prima facie at least, no resulting trust for the purchaser, but the purchase and conveyance will be deemed a gift, advancement, or settlement, as the case may be, for the wife or child, because of the duty or obligation of the husband or father to make provision for his wife or child. In all such cases, however, it appears to be settled, after some conflict of decision, that parol evidence, though received with great caution, and not deemed sufficient unless it be of a very clear character, is admissible to establish the collateral facts (not contradictory to the deed, unless in the case of fraud) from which a trust may legally result. 2 Story, Eq. Jur. secs. 1201, 1202; *Lench* v. *Lench,* 10 Ves. Jr. 517, 4 Kent, Com. 305. And as a re-

sulting trust may be established by parol evidence, it may also, notwithstanding the statute, be rebutted by the same species of proof; and therefore parol evidence will be admitted to prove the purchaser's or grantor's intention that the person to whom the conveyance was made should take beneficially. 2 Story, Eq. Jur. sec. 1202; *Dyer* v. *Dyer,* 2 Cox, Ch. Cas. 93, 2 Revised Rep. 14; Sugden, Vend. & P. chap. 15, sec. 2, pp. 615 to 628; 2 Taylor, Ev. p. 896. * * * There is one general principle, however, that may be stated as settled, and that is that a conveyance made to a wife or child will be presumed to carry a beneficial interest, and whenever that presumption is attempted to be overcome, it can only be done by the most indubitable evidence. And where the husband, as in this case, has devested himself of the legal estate in favor of his wife, the presumption that the beneficial interest was intended to pass is so strong as to be almost irrebuttable. Indeed, in such case, there is no substantial reason for the conveyance, if not to convey the beneficial interest, as well as the mere legal title. And another principle must be kept in mind, and that is that no parol evidence can be allowed to contradict the terms of the deeds, except where they are impeached for fraud."

This brings us to the sufficiency of the evidence in this case to overcome the legal presumption behind which defendant is intrenched, and to establish a resulting trust in favor of the husband. In our opinion, plaintiff has totally failed to prove his case. The amount of cash purchase money paid on the purchase of the second property was less than the purchase price of the first property, which plaintiff testifies he advanced. True, $7,000 was paid by defendant on the mortgage on the second property, which was paid out of the business; but it is doubtful if plaintiff could assert a resulting trust for this. Assuming, without deciding, that he could, it is undisputed that defendant not only managed the business, but that she contributed her share toward the labor expended in conducting it. The fact, therefore, that the business contributed to the liquidation of the mortgage is not inconsistent with an original intent that the real estate should be the sole property of the

wife. Evidence as to who was understood to own the business may be eliminated; since, in this view of the case, the real estate is separated from the business, and plaintiff may be conceded, for the purpose of the argument, to have furnished the money with which the original piece of real estate was purchased. We are here concerned only with the reasonable inference to be drawn from the evidence and circumstances of the case in accounting for the title being in the name of the wife throughout the whole business career of this husband and wife. The testimony of the husband is meager and most indefinite. The testimony of the witnesses, as to the casual statements of the defendant in relation to the ownership of the home being in the husband, is not convincing. It is rebutted by the clear, decisive testimony of the defendant, and, in some instances, discredited by other circumstances clearly established by undisputed evidence. Proof of casual statements by the husband or wife as to the ownership of their home and place of business, such as has been adduced in this case, has little force in determining the status of the title. *Meech* v. *Smithsonian Inst.* 8 App. D. C. 490. Another strong inference supporting defendant's contention that the property is hers is to be drawn from the fact that for more than ten years, extending through all the various purchases and conveyances of real estate, plaintiff acquiesced in defendant holding the title in her name. This raises a presumption, at least, of an intention to vest the title in defendant, whatever view may be entertained as to the ownership of the business in which they were engaged. Indeed, long-continued acquiescence by the *cestui que trust* may operate as a bar to the enforcement of a resulting trust. "Courts will not enforce a resulting trust after a great lapse of time, or laches on the part of the supposed *cestui que trust,* especially when it appears that the supposed nominal purchaser has occupied and enjoyed the estate." 1 Perry, Trusts, 6th ed. sec. 141.

In no view of the case is the evidence sufficient to justify the disturbance of this title, since it wholly fails to surmount the barrier which the law has erected for the protection of the rights of defendant. We have, in considering this appeal, large-

ly disregarded the various theories relied upon in the trial below and advanced in the briefs and arguments of counsel, and adopted a course of our own, which seems to us, from the standpoint of least resistance, to lead logically to the root of the controversy.

· The decree is reversed, with costs, and the cause is remanded, with directions to dismiss the bill.

*Reversed and remanded.*

A motion by the appellee for a rehearing was denied January 3, 1916, Mr. Justice VAN ORSDEL delivering the opinion of the Court:

By motion, appellee seeks a rehearing, on the ground that the case was here decided upon an issue not raised by the pleadings, or upon which evidence was not adduced in the court below. It is urged that our decision is based upon a gift or settlement to the wife, when no such defense was set up in her answer; that defendant claimed the property as her own, purchased with her own money, earned from her own business; that the case was tried in the court below on this theory, and that it was here disposed of upon an issue on which plaintiff has not had his day in court.

Plaintiff, after a futile attempt in a prior suit to establish title to a one-half interest in the property in controversy, a position totally at variance and inconsistent with the position taken in the present case, then filed the original bill in this cause, which was substituted by an amended and supplemental bill, which, in turn, was twice amended, each successive pleading being in its material points inconsistent with those which preceded it, and finally settled down to a resulting trust, based upon the averment that the various properties had been purchased by him with his money, and that the title had been placed in the wife as trustee. The other averments of the bill, as finally amended, related to a recital of the various transactions by which property was purchased and sold, finally culminating in the purchase of the property here in question, the title to which he seeks to have decreed in him. Defendant in her answer positively denied the averments of the bill upon which

plaintiff predicated a resulting trust and upon which he solely pitched his case. His testimony was directed to proof of these averments, not only that his money went into this property, but that it was derived from his business, which, as some of his witnesses testified, was reputed to be his. Defendant, in addition to denying the trust, answered that the properties were purchased from her own money derived from the business, which was hers. The issue as to who owned the business was incidental to and merely probative of the general issue, whether plaintiff furnished the money with which the real estate was purchased, the title to which was placed in the wife's name.

We disposed of the appeal on the weakness of plaintiff's case, rather than upon the strength of defendant's case. The averments of plaintiff's bill negative the presumption of a resulting trust, and raise the presumption of an intention, by placing title in the wife, to convey the beneficial interest. The presumption of gift or settlement arises from the central issue in the case, namely, Is it true that these properties were purchased with the money of plaintiff, and, if so, was it the intention to vest in defendant the beneficial interest? To say now that this issue was not in the case below is to trifle with the intelligence of the court. The presumption arises from the averments of the bill upon which plaintiff relies to establish a resulting trust, and the particular defense interposed does not shift the issue. Plaintiff cannot conceal the legal infirmities of his case behind mere technical objections to the strength of defendant's case. He must not only be able to meet the legal obligations which his chosen remedy imposes, but assume the burden of proof in meeting the assaults of the defense.

But plaintiff's situation is not improved by a disposition of the case upon the theory urged by his counsel. The wife testified that after arriving in this country they lived in mining camps in the vicinity of Pittsburg. Plaintiff worked in the mines while defendant washed and cooked for the miners. She testified that in this way she saved $272. They then moved to Latrobe, where, with this money, she started the fruit business, from the profits of which she testified that she purchased the first Latrobe property for $2,200. Plaintiff, of course, denied

that defendant cooked and washed for the miners.   Here it may be suggested that this was not such an affirmative defense as to cast the burden of proof on defendant.   Plaintiff pitched his case upon the averment. that defendant managed the business and purchased the real estate as trustee.   Defendant answered back that the business and real estate was purchased with her money.   With the title in her, his burden was not lifted at any point in the defense.   With the issue at this crucial point turning upon the conflicting testimony of plaintiff and defendant alone, it was incumbent upon plaintiff to furnish some corroboration in order to meet successfully the burden resting upon him.   On this point plaintiff brought no corroborating witness, which would seem to have been possible, considering the diligence with which witnesses were found in and about Latrobe.   Plaintiff was not taken by surprise.   This defense was set up in the answer, and plaintiff anticipated it by denying it in his testimony in chief.   It would seem that if plaintiff's testimony is true, he could have found someone who would have been sufficiently familiar with their domestic affairs to have corroborated him.   As it is, on the case leading up to the purchase of the first property, we have the testimony of plaintiff rebutted by the positive statements of defendant.

At the time of the sale of the first property, both agreed that, from the proceeds of the sale and the sale of the business, about $7,000 or $8,000 was on hand.   With this they returned to Italy.   After more than a year had elapsed, they returned to Latrobe with about $3,000 left, and, out of this, furniture and supplies and a restaurant business were purchased, leaving about $2,000, which was used to make the cash payment on the purchase price of the second property.   Plaintiff disliked the restaurant business, which seems to have been a failure.   The daughter testified that at this time plaintiff was drinking heavily and was most abusive to his wife and children.   Finally plaintiff proposed separation.   The wife testified "that after being in the lunch-room business about three weeks with her husband, he would not stay any longer, and he asked witness to give him $500, and that he would go away and not return any more; that she could take the children and

the balance of the money; witness gave him the $500." The wife further testified that she got this $500 from the bank where the money was on deposit, and that plaintiff left and was gone for about three weeks, during which time she disposed of the restaurant and purchased the second property in Latrobe, from the proceeds of the sale of which the present property was purchased. In these facts the wife is positively corroborated by the testimony of the daughter. Of course, plaintiff denies that he entered into the separation agreement and that he left as stated by the wife and daughter, but on this point there is a strange lack of corroboration. Of all the Latrobe witnesses introduced by plaintiff, but one places him at home at the time of the purchase of the second property. It would seem from the extreme familiarity of these witnesses with the domestic and business affairs of plaintiff and defendant that someone would have known if plaintiff was at home during this particular period, and could have been used as a corroborating witness in this particular. None of these witnesses are used to rebut the testimony of the daughter as to plaintiff's habits and conduct toward his family at this time.

The one witness Borgese testified that he was present when it was decided to purchase the second property; that plaintiff "went upstairs, and took a bunch of money out of the trunk, and came down and gave it to my aunt (defendant) in my presence, and my uncle (plaintiff) said 'go and buy the property.' " This witness is not only rebutted by the positive testimony of the wife and daughter, but he is not corroborated by plaintiff himself. No attempt is made in the testimony of the plaintiff to corroborate the statement of his witness in regard to this transaction. In fact, plaintiff only claims in his testimony to have furnished the money to purchase the first property. The testimony of this witness is indirectly contradicted by plaintiff himself, where he testifies that under the arrangement with his wife she deposited the money in bank in her name. She testifies that at the time this property was purchased the money was deposited in the Citizens National Bank of Latrobe, and that she drew it from the bank to make the purchase. If this

was untrue, it would have been easy to establish its falsity from the books of the bank. Of the bankers produced as part of the Latrobe witnesses,—and there were two officials of this bank,—no one was called upon to testify to the fact that defendant had not this amount of money deposited in bank at this time. If the money was in bank, it was not in plaintiff's trunk. Witness Borgese is not only discredited by the testimony of the wife and daughter, but by the circumstances of the case surrounding the transaction of which he testified.

With the agreement of separation established at a time when no real estate was owned or question of title involved, the binding effect, as between the husband and the wife, of such an agreement, can hardly be disputed. But without considering that feature of the case, if plaintiff had proved a prior interest in the business, his conduct at this time was such as to completely discredit his contention of, at least, any further interest in the business or the real estate that was purchased and paid for from the proceeds of the business. In no view of the case is plaintiff entitled to prevail. The motion for rehearing is denied.                               *Motion denied.*

The Supreme Court of the United States on March 1, 1916, denied a petition by the appellee for a writ of certiorari.