**KOSTERS et al. v. HOOVER et al.**
No. 6954.

United States Court of Appeals for the
District of Columbia.
Decided May 16, 1938.

Petition for Rehearing Denied July 27, 1938.

B. Woodruff Weaver, of Washington, D. C., and Daniel Thew Wright, of Fenwick, Md., for appellants.

Chas. W. Arth, of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and STEPHENS and MILLER, Associate Justices.

## MILLER, Associate Justice.

Henry F. Woodard was the owner of a promissory note secured by a deed of trust on certain real property in the District of Columbia. The note being past due and unpaid, Woodard directed the trustees to sell the property—which they did on November 17, 1933, at public auction. The property was bid in 'in the name of Alice S. Woodard, wife of Henry F. Woodard, at a price of $5500, subject to a first mortgage, unpaid taxes and interest. A deed—conveying the property to Alice S. Woodard—previously prepared by Woodard, which recited that the purchase money had been paid to the trustees, was executed and delivered immediately after the sale. The trustees, at the request and direction of Woodard, endorsed on the back of the note a credit for $5435.40, the amount of the bid, less auctioneer's fee and cost of advertising the sale.

Alice S. Woodard went into possession of the property and managed it until her death in May, 1935. More than six months thereafter, and over two years after the date of the sale, Woodard presented to the administratrix of his wife's estate a claim for the amount of the purchase price of the property. This was the first time that he had ever made a claim against his wife or against her estate on this account. Although Woodard participated in the management of the purchased property, acting for Mrs. Woodard on numerous occasions, the record fails to reveal that any claim of a vendor's lien against the property had ever been made to anyone. When the administratrix failed to make payment, Woodard communicated with the trustees, advising them that Mrs. Woodard had not paid them the purchase money, and requested them to take action to recover ·the same. Appellee Frank W. Hoover, one of the trustees, declined to act. Thereupon, the second trustee, appellant Kosters, instituted the present suit in the District Court of the United States for the District of Columbia against trustee Hoover, Luella Hoover, individually and as administratrix, and Woodard himself. The latter joined with Kosters as an appellant on this appeal.

The bill prayed for a decree (1) "establishing the rights of the plaintiff . . . to the specific performance of the contract of sale , . . to the late Alice S. Woodard . . . of the property . . .." therein described; (2) establishing a vendor's lien for the amount of the purchase price; (3) for the sale of the property to pay the lien for the unpaid purchase price; (4) for the appointment of a substitute trustee; and (5) establishing "that the late Alice S. Woodard, in her lifetime did not pay to the trustees . . . the amount by her bid . . . .."

Appellees contend, in substance, that Woodard made a gift of the property to his wife, intending that she should take it clear of any such ·claim as is now made against her estate; that the endorsement on the note, the recital in the deed that the consideration for the sale had been paid, and the other circumstances present in the case proved that payment had been made; consequently, that there was no basis upon which to assert a vendor's lien. The lower court so held. It held further that Woodard—whom the court properly treated as the moving party—had failed to establish any ground for equitable relief. This appeal is from the decree dismissing the bill.

A vendor's lien[1] is a right arising in equity by means of which an unpaid vendor, who took no other security, is empowered to reach the property—the

---

[1] Although the lien which exists for the payment of the purchase money when title is transferred is commonly denominated a *vendor's lien* by the courts and textbook writers, it is more accurate to refer to it as a *grantor's lien*. 3 Pomeroy, Equity Jurisprudence, 3d Ed. 1905, § 1249, n. 1, § 1260; 1 Chafee and Simpson, Cases on Equity, 1934, 660, 662, 663; Frame v. Sliter, 29 Or. 121, 128, 45 P.

title to which he had transferred—to satisfy the debt which constitutes the consideration for the transfer.[2] It is true that a recital in a deed that the consideration has been paid does not necessarily prevent a court of equity from establishing and enforcing a lien.[3] But when all the facts taken together prove, as they do in the present case, that the purchase price was paid no lien exists, for it is the fact that the purchase price is unpaid and unsecured which creates the lien and it is the existence of the unpaid debt which sustains it. Nutter v. Fouch, 86 Ind. 451, 456; Marchand v. Chicago, Burlington & Quincy Ry. Co., 147 Mo.App. 619, 626, 127 S.W. 387, 389. See Pleasants v. Fay, 13 App.D.C. 237. In the present case the purchase price bid was paid by Woodard and, consequently, there was no lien to be enforced by the trustees. While it is true that Major Walter Hoover, Mrs. Woodard's brother, bid in the property in her name, there is nothing in the record which discloses an agency relationship between them.[4] There is no evidence that Mrs. Woodard appointed Major Hoover to act for her to purchase the property, or for any purpose, or that she even knew there was to be a sale of the property. On the contrary, the evidence appears rather to establish an agency relationship between Woodard and Major Hoover. Thus, Woodard testified:

"  .  .  .  The first bid I made for $5,-000.00; Major Hoover bid the property in; I have no recollection of giving him any *special* instructions except that *if I made a bid, he could make a bid. In other words, I was wanting to have more than one bid,* assuming that there were no other bidders there." [Italics supplied]

This does not indicate that Major Hoover acted on behalf of Mrs. Woodard, but instead that he acted as agent for Woodard, and, consequently, that the latter was the real purchaser. This conclusion is further supported by the fact that appellant Kosters, one of the trustees—and an associate in the office of Woodard at the time of the sale—made no effort to collect the purchase price from Mrs. Woodard or from Major Hoover.

Legal title to property held under a deed of trust is in the trustee; the equitable title in the debtor. Smith v. Jackson, 48 App.D.C. 565, reversed on other grounds, 254 U.S. 586, 589, 41 S.Ct. 200, 201, 65 L.Ed. 418. See Everette v. Woodward, 162 Va. 419, 426, 427, 174 S.E. 864, 867. Neither legal nor equitable title is in the *cestui que trust,* the creditor. Consequently, the latter may properly become the purchaser at a sale of the property.[5] When the creditor becomes the purchaser at the sale, he is entitled to credit the amount of the purchase money to the debt. D.C.Code 1929, tit. 25, § 207. Such a credit is in fact and in law a money payment to the use and benefit of the debtor.[6] It follows that the endorsement on the note, made at the direction of

290, 292, 34 L.R.A. 690, 54 Am.St.Rep. 781; Hooper v. Central Trust Co., 81 Md. 559, 588, 32 A. 505, 512, 29 L.R.A. 262.

[2] Brown v. Gilman, 4 Wheat. 255, 290–292, 4 L.Ed. 564; Chilton v. Braiden's Adm'x, 2 Black 458, 17 L.Ed. 304; Bayley v. Greenleaf, 7 Wheat. 46, 5 L.Ed. 393; Fisher v. Shropshire, 147 U.S. 133, 140, 13 S.Ct. 201, 37 L.Ed. 109; Slide & Spur Gold Mines v. Seymour, 153 U.S. 509, 517, 14 S.Ct. 842, 38 L.Ed. 802; Pleasants v. Fay, 13 App.D.C. 237, 244; Minah Consol. Min. Co. v. Briscoe, 9 Cir., 89 F. 891, 895, certiorari denied 175 U.S. 727, 20 S.Ct. 1023, 44 L.Ed. 339; Wilson v. Plutus Mining Co., 8 Cir., 174 F. 317. See Marsh v. The Minnie, 16 Fed.Cas. 810, No. 9117.

For an historical treatment of the subject see Frame v. Sliter, supra note 1; Ahrend v. Odiorne, 118 Mass. 261, 19 Am.Rep. 449.

[3] See Cordova v. Hood, 17 Wall. 1, 5, 21 L.Ed. 587; Posey v. Dodson, 211 Ala. 335, 100 So. 488; Lay v. Gaines,

130 Ark. 167, 196 S.W. 919; Hooper v. Central Trust Co., supra note 1.

[4] "An agency is created—authority is actually conferred—very much as a contract is made, i. e. by an agreement between the principal and agent that such a relation shall exist. The minds of the parties must meet in establishing the agency. The principal must intend that the agent shall act for him . . . .." Taft, J., in Central Trust Co. v. Bridges, 6 Cir., 57 F. 753, 764. See Restatement, Agency, 1933, §§ 1, 7, 15, 26.

[5] Smith v. Jackson, 48 App.D.C. 565, reversed on other grounds, 254 U.S. 586, 589, 41 S.Ct. 200, 201, 65 L.Ed. 418; Smith v. Black, 115 U.S. 308, 315, 6 S.Ct. 50, 29 L.Ed. 398; Easton v. German-American Bank, 127 U.S. 532, 8 S.Ct. 1297, 32 L.Ed. 210; Twin-Lick Oil Co. v. Marbury, 91 U.S. 587, 590, 23 L.Ed. 328; Smith v. Beard, 128 Miss. 1, 8, 90 So. 592, 593; Merryman v. Blount, 79 Ark. 1, 94 S.W. 714.

[6] Easton v. German-American Bank,

Woodard, crediting thereon the proceeds of the auction sale, constituted payment. Appellants contend, however, that the motive for making the endorsement was Woodard's desire to sue on the note in West Virginia for the balance due thereon. This strengthens rather than weakens our conclusion. It is not a prerequisite to suit for the balance on a secured note that credit first be given for the amount bid at a sale of the security, if in fact that amount was not paid. On the contrary, under such circumstances, the action of the creditor in applying the amount of the sale to the note is highly persuasive that payment was intended.[7] Consequently, there was substantial evidence to support the lower court's conclusion that the trustees were paid, and there is no reason for us to disturb that conclusion.[8]

Nor is appellant Woodard entitled to equitable relief, either on the theory of a resulting trust, or of a vendor's lien. The general rule is well established that when the purchase money is paid by one and the property is taken in the name of another, a resulting trust arises in favor of the party paying.[9] However, there is an equally well established exception to the rule, to the effect that when the person who pays the purchase money has the title conveyed to his wife, the purchase and the conveyance are presumed to constitute a gift or advancement to the wife, or a settlement upon her, because of the husband's legal duty to make provision for his wife.[10] This presumption may be rebutted by clear and satisfactory evidence that a resulting trust was intended.[11] But the evidence "must be such as to leave no well founded doubt that a trust was intended." Hubbard v. McMahon, 117 Ark. 563, 576, 176 S.W. 122, 126; McGee v. McGee, 81 N.J.Eq. 190, 86 A. 406. In the present case, there is no evidence that Woodard intended a trust to arise in his favor from the transaction.

It is true, therefore, as appellants argue, that the presumption of a gift or settlement, the presumption of payment resulting

---

supra note 5, at page 539, 8 S.Ct. 1297. See, also, Smith v. Black, supra note 5, at page 320, 6 S.Ct. 50; Witter v. Bank of Milpitas, 204 Cal. 570, 580, 581, 269 P. 614, 619; Thomason v. Pacific Mutual Life Ins. Co., Tex.Civ.App., 74 S. W.2d 162; Security Building & Loan Ass'n v. Bacon, 62 N.D. 658, 665–666, 244 N.W. 644, 646.

[7] See Citizens' State Bank v. Clark, 5 Cir., 75 F.2d 791, 793.

[8] The common law doctrine of the vendor's lien has been rejected by statute in several states (Jones v. Janes, 56 Ga. 325; Yancey v. Mauck, 15 Gratt., Va., 300, 304–305), and by judicial decision in others. Frame v. Sliter, supra note 1; Ahrend v. Odiorne, supra note 2; Greeno v. Barnard, 18 Kan. 518; Edminster v. Higgins, 6 Neb. 265; Hiester v. Green, 48 Pa. 96, 86 Am.Dec. 569; Philbrook v. Delano, 29 Me. 410. The desirability of the doctrine has been questioned even in jurisdictions where the lien is held to be enforceable. Thus, Marshall, C. J., in Bayley v. Greenleaf, supra note 2, at page 51, said: "A vendor relying upon this lien, ought to reduce it to a mortgage, so as to give notice of it to the world. If he does not, he is, in some degree, accessary to the fraud committed on the public, by an act which exhibits the vendee as the complete owner of an estate on which he claims a secret lien." And Lord Eldon, in Mackreth v. Symmons, 15 Ves. 329, 339, said: "It has always struck me considering this subject, that it would have been better at once to have held, that the lien should exist in no case, and the vendor should suffer the consequences of his want of caution; or to have laid down the rule the other way so distinctly, that a purchaser might be able to know, without the judgment of a Court, in what cases it would, and in what it would not, exist."

[9] Olcott v. Bynum, 17 Wall. 44, 59, 21 L.Ed. 570; Ducie v. Ford, 138 U.S. 587, 592, 11 S.Ct. 417, 34 L.Ed. 1091; Smithsonian Institution v. Meech, 169 U.S. 398, 407, 18 S.Ct. 346, 42 L.Ed. 793; Jenkins v. Pye, 12 Pet. 241, 252, 9 L. Ed. 1070; Restatement, Trusts, 1935, § 440.

[10] Ciffo v. Ciffo, 44 App.D.C. 217, certiorari denied, 241 U.S. 660, 36 S.Ct. 448, 60 L.Ed. 1226; Smithsonian Institution v. Meech, supra note 9; Jackson v. Jackson, 91 U.S. 122, 125, 23 L.Ed. 258; Fry v. National Savings & Trust Co., 53 App. D.C. 191, 289 F. 589; Ockstadt v. Bowles, 34 App.D.C. 58, 67; McCartney v. Fletcher, 11 App.D.C. 1, 9; Cohen v. Cohen, 1 App.D.C. 240, 244; Carpenter v. Gibson, 104 Ark. 32, 148 S.W. 508; Page v. Page, 132 Va. 63, 110 S.E. 370; Restatement, Trusts, 1935, § 442.

[11] Ciffo v. Ciffo, supra note 10, at page 223; Cohen v. Cohen, supra note 10; McCartney v. Fletcher, supra note 10, at page 11. See, also, Whitley v. Ogle, 47 N.J.Eq. 67, 20 A. 284.

from the recital in the deed, and the presumption of payment from the endorsement on the note, are all subject to rebuttal. But this formidable array of presumptions is entirely unrebutted in this case. They are all consistent with the other circumstances of the case and together make an harmonious whole. The fact that they are—as a matter of law—individually rebuttable is of no importance in itself, without more.

Nor can a vendor's lien be established in favor of Woodard. Not only does this conclusion follow from the considerations already set out against the trustee's claim of a lien, but an additional obstacle stands in the way of such a claim by Woodard, *i. e.*, that he was not the vendor. As we have already pointed out, legal title to this property, prior to the sale, was in the trustee; equitable title was in the debtor. Neither legal nor equitable title was in Woodard. Moreover, there is no evidence upon which a claim could be founded that Woodard was subrogated to the rights of the trustees, even if a vendor's lien had existed; and no such claim is made.[12]

We have carefully considered appellants' other assignments and find them to be without merit.

*Affirmed.*

---

[12] For cases holding that the payer of the purchase price is not subrogated to the vendor's lien, unless he was a surety for the debt or there was an agreement, express or implied, to that effect, see Lutes v. Warren, 146 Ga. 641, 92 S.E. 58; Allen v. Caylor, 120 Ala. 251, 24 So. 512, 74 Am.St.Rep. 31. See, also, Boughner v. Laughlin's Ex'x, 64 S.W. 856, 23 Ky. Law Rep. 1166; Law v. Lubbock Nat. Bank, Tex.Civ.App., 21 S.W.2d 92, 95; Martin v. Martin, 164 Ill. 640, 45 N. E. 1007, 56 Am.St.Rep. 219; 3 Pomeroy, Equity Jurisprudence, 3d ed. 1905, § 1254. Contra: Carey v. Boyle, 53 Wis. 574, 11 N.W. 47.