## COHEN v. COHEN.

EVIDENCE; HUSBAND AND WIFE; RESULTING TRUSTS.

1. Where a purchaser of land causes the title to be placed in his wife, the presumption is that he intends the purchase and conveyance as a gift or advancement to her.
2. And to rebut this presumption and show a resulting trust in the husband, after the wife's death, in a proceeding against her infant heirs at law for that purpose, will require the clearest and most satisfactory proof.

No. 114.    Submitted June 14, 1893.—Decided October 2, 1893.

HEARING on bill, answer and testimony, certified by a special equity term of the Supreme Court of the District of Columbia, to the General Term of that court, to be heard in the first instance, and transferred to this court by operation of law.   *Bill dismissed.*

THE COURT in its opinion stated the case as follows:

Complainant, Edward Cohen, filed this bill in the Supreme Court of the District against his minor children, Naomi and Eva Cohen, to have a trust declared in a certain lot in the city of Washington in his favor.

He alleges that he purchased the lot March 18, 1875, of H. P. Saunders, for $2,500, paying $500 in cash and giving his notes for the remainder, of which one was for $1,500 secured by deed of trust, sixteen for $30 each, and one for $20, which last seventeen notes were also secured by a second deed of trust. He further alleges that he paid all of the notes secured by the second deed of trust, and $250 on account of the $1,500 note, the remainder of which he also paid with the proceeds of two notes executed by himself and his wife, Louisa J. Cohen, jointly, April 17, 1878, for $1,000 and $250, respectively, both payable three years after date and secured by deed of trust on the property. Of this last indebtedness, he claims to have paid the $250 note and $200 on account of the other. He also alleges that all of these payments were made " by him out of his own money, and no part thereof was furnished or contributed by his wife."

The deed for the property was made by Saunders to Louisa J. Cohen, to her sole use, etc. Louisa J. Cohen died intestate, January 28, 1888, leaving two children, the defendants, Naomi and Eva, who, at the time of filing the bill—May 27, 1891—were aged seventeen and ten years respectively.

Complainant further alleges, that it was " his purpose and intention to have the title to said real estate conveyed to himself and his wife jointly, or in such manner as would vest the title thereof in the survivor in fee on the death of either; that he so directed the scrivener who prepared the deed; that through inadvertence or mistake, the said property was conveyed to the sole and separate use of his said wife in fee simple."

He also says, that he is " an ignorant man, unable to read or to more than write his name; that his said wife always recognized his right to the property and his ownership thereof, and it was only after her death that he learned that the title thereto descended to his children to his exclusion." The prayer of the bill was " that a decree may be passed correcting said deed, and declaring that the said defendants hold said title in trust for complainant, and that a trustee may be appointed to convey said title to him."

A guardian *ad litem* was appointed for the defendants, who filed the usual formal answer, neither admitting nor denying the truth of the bill, and evidence was taken on behalf of complainant to prove the same.

The case was then certified by the justice presiding at the equity term to the General Term, to be heard in the first instance, where, not having been tried, it was transferred to this court, in accordance with the requirements of the act of Congress creating it.

Complainant testified that of the first payment of $500 cash on the property, $200 was his own money and $300 money borrowed by him of his mother. He produced the seventeen small notes set out in the bill, and the $250 note executed April 17, 1878, and said that he paid them with " his own money, the product of his own labor." He said that his wife had no property at the time of marriage, and acquired none. Respecting the conveyance of the property he said: " I intended to have the property so mentioned in the deed that it would have gone to the survivor of myself and wife in the event of the death of either, and I so instructed the party who prepared the deed." He further said that he had been informed that J. C. Caldwell, who wrote the deed, is dead, and he could not remember whether any one was present when he gave the instructions. He also said that he could write his name, but could not read writing. He did not state when or how he discovered that the deed had not been written in accordance with his instructions.

Naomi Cohen, the oldest of the defendants, as a witness for complainant, said: " I heard the matter of the ownership of the property discussed by my father and mother three or four times prior to my mother's death, and my mother always recognized that my father owned the property, and requested him several times to take the property back in his own name."

Ann Pinkney, mother of the complainant, said: " I let my son have $300 by way of loan some years ago for the purpose of paying on the purchase price of the house where he now lives. His wife had no property of her own at the time of her marriage, and she acquired none after."

The only other witness was John T. Lucas, the guardian *ad litem*, who said substantially that he had known complainant since 1863, and knew his wife before her death. That he saw them almost every day, and knew that Mrs. Cohen had no property at the time of her marriage and acquired none after. He also said that Cohen was a "hard working man, and so far as I know obtained the money for which he paid for this property from his labor." He further said: "Mrs. Cohen requested me on several occasions to use my influence to get her husband to sell the property and buy another place, where she thought he could do better."

The seventeen small notes produced in evidence bear the signature of Louisa J. Cohen alone, while the $250 note is signed by her and her husband jointly.

*Mr. B. F. Leighton* filed a brief on behalf of the complainant, in which was cited: 1 Perry on Trusts, Sec. 126; *Dyer* v. *Dyer*, 2 Cox's Ch., 91; *Gogherty* v. *Bennett*, 37 N. J., 87; *Harden* v. *Darwin*, 66 Ala., 61.

There was no appearance for the defendants.

Mr. Justice SHEPARD delivered the opinion of the court:

No appearance has been made for the defendants in this court and the cause has been submitted on the brief of the complainant's counsel.

Instead of being formally an action to declare a resulting trust in complainant, it should properly be one to reform the deed and make it correspond with the intention of the parties at the time of its execution. The practical effect of both, however, is the same, for if the deed had been made as complainant states that he intended it should be, it would have passed the title to both in joint tenancy; and we will therefore consider it in the form presented by complainant.

In order to create a resulting trust in a stranger to the title by parol evidence, it must be clearly proved that the purchase money was advanced by him not as a loan or gift.

" The presumption is, in the absence of all rebutting circumstances, that he who supplies the purchase money intends the purchase to be for his own benefit, and not for another, and that the conveyance in the name of another, is a matter of convenience and arrangement between the parties for collateral purposes." 1 Perry on Trusts, Sec. 126. " The trust must result, if at all, at the instant the deed is taken, and the legal title vests in the grantee. No oral agreements, and no payments, before or after the title is taken, will create a resulting trust, unless the transaction is such at the moment the title passes that a trust will result from the transaction itself." Id., Sec. 133.

But where a purchaser takes the conveyance, not to a stranger, but to his wife, the presumption of a resulting trust that arises where the grantee is one for whom he is under no natural, moral or legal obligation to provide, is rebutted, and the contrary presumption arises, that the purchase and conveyance was intended as a gift or advancement to the grantee. Id., Sec. 143.

It is universally held that while parol evidence will be received, all the facts necessary to establish the resulting trust must be proved with clearness and certainty; and they must not only be certain, but consistent with each other and the alleged intent of the parties. The necessity for clear and satisfactory proof is still stronger in a case like this, where the transaction is an old one, the wife dead, and her heirs at law helpless children.

Tested by the foregoing rules, the evidence in this case, to our minds, is not sufficient. That the conveyance was intended to be to the wife alone, is supported by the fact that all of the original purchase money notes produced on the hearing are signed by her alone. The fact that she was not known to have any separate property, while a circumstance to show that she did not herself pay the purchase money, does not at all tend to rebut the presumption that it was the intention of the husband to make a sure provision for the wife; on the contrary, it would tend rather to strengthen the

presumption by showing a good reason for such provision. It is not shown that the husband had any property other than that acquired by his labor from year to year; nor is it shown that the wife did not by her labor furnish, or assist in furnishing, the money which went to pay the purchase price.

The testimony as to the mistake in the deed, comes solely from the husband, after a lapse of sixteen years from its delivery and three years after the death of the wife. There is nothing in the testimony to show when he first discovered the mistake or to explain his delay in the assertion of his rights. The declarations of the mother, testified to by the daughter, do not show that the deed when made did not express the intent of all the parties.

But these declarations, if sufficient to show that she recognized the husband as the sole owner, are inconsistent with his statement that the title was to be vested in both as joint tenants. They, however, prove one fact conclusively, and that is, that before the wife's death the complainant must have known that the title was in her name only, for the witness said: " My mother always recognized that my father owned the property, and requested him several times to take the property back in his own name."

A suggestion is made that a great hardship will be inflicted upon complainant by the denial of his prayer. With the remote consequences that may result from the making of conveyances like this, we have nothing to do. Courts of equity do not sit for the purpose of relieving from hardships merely, when brought about by persons laboring under no disability, through their own deliberate act; nor do they aid them in undoing the effects of affection or generosity, which, after the lapse of time or change of circumstances, they may come to regret.

The relief prayed for must be denied. The cause must be remanded to the court from whence it came, with direction to pass a decree *dismissing the bill, with costs to the defendants.*