# REPORTS OF CASES

### ADJUDGED IN

# THE COURT OF APPEALS

#### OF THE

## DISTRICT OF COLUMBIA.

---

## LONG *v.* SCOTT.

---

### EQUITY; RESULTING TRUSTS; EQUITABLE LIENS.

1. To establish a resulting trust in favor of one furnishing purchase money of real estate, it must be clearly shown that the whole of the purchase money was paid by the one seeking to have such trust declared, or that the purchase was of some definite interest or determinate aliquot part of the property.

2. Where a mother paid part of the purchase money of a dwelling house bought by her son, on the oral agreement of the son that she should have practically a life estate in the premises in common with him, an equitable lien in favor of the mother may be declared upon the property, upon her eviction from it, to the amount of the sum so advanced, where a resulting trust in her favor cannot be declared because of nothing to show the actual amount paid for the property.

No. 1373.  Submitted April 15, 1904.  Decided May 4, 1904.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity to charge certain real estate with an equitable lien or resulting trust in favor of the complainant.  *Reversed.*

VOL. XXIV—1

The COURT in the opinion stated the case as follows:

Maria Long, the appellant in this cause, filed her bill of complaint in the supreme court of the District on September 24, 1902, to charge certain real estate in the city of Washington with a trust or lien in her favor, and to enforce such trust or lien. She alleged in her bill that, on or about June 27, A. D. 1877, she had been induced by her son, Samuel Wills, now deceased, to pay $400 on account of the purchase of a house and lot in this city, being the real estate referred to, upon the promise and agreement of said Wills with the complainant that she was to own and possess a proportionate part of said real estate for her own exclusive use and benefit, together with the freedom of the premises for and during her natural life; that this sum of $400 contributed by her was the first money paid on account of the purchase; and that thereupon her son, Samuel Wills, delivered to her the possession of a room in said premises, which she continued to use and occupy, with the freedom of the premises, until May, 1895, when she was induced to leave the place by alleged false representations on the part of the appellee, Shedrich D. Brown. She alleged also that during her occupation she had paid taxes, both general and special, for the property, the amount of which, however, is not stated and does not appear.

It is alleged, further, that the title to the property was taken by Samuel Wills, not in his own name, but in the name of his wife, Mary M. Wills, who never at any time contributed any money on account of the purchase; and that Samuel Wills, from his earnings as an employee of the War Department, contributed the remainder of the purchase money, the amount of which is not stated, and seems probably to have been $2,300.

Mary M. Wills died intestate before her husband, leaving surviving her two children, one of whom died at the age of twelve years without issue, and the other, Beatrice Wills, survived and married the appellee, Shedrich D. Brown. Samuel Wills, son of the complainant and purchaser of the property, survived and lived on the premises with his wife and children and his mother until April 12, 1892, when he died intestate. Beatrice Wills,

who married Shedrich D. Brown, and in whom was the legal title to the premises, died in 1895, leaving her husband surviving her and one infant child, who died in the following year, 1896. The title, that was in this child, thereupon devolved upon the appellee, Elsie A. Scott, the sister of the purchaser, Samuel Wills, subject to a tenancy by the curtesy in Shedrich D. Brown; and this last is now in the possession of the property, and has evicted the complainant therefrom.

The bill of complaint proceeds to allege that Brown is an intelligent young man; that the complainant is an ignorant and illiterate woman, now about one hundred years of age; that Brown, having first ingratiated himself into the favor of the complainant, subsequently induced her to remove from the premises on the promise to pay her $5 a month during her life; that he paid her this sum for one month, and never paid her any more during the eighty-six months following before the filing of the bill of complaint, for which he was indebted to her in the sum of $430. And, as already intimated, the bill prayed for the establishment of a trust or lien in her favor as against Elsie A. Scott, her daughter, in whom is the legal title to the property, subject to the life tenancy of Shedrich D. Brown, and against this latter as the person in possession and entitled by his curtesy to such possession. These two, Elsie A. Scott and Shedrich D. Brown, were the defendants to the bill.

Elsie A. Scott neither appeared nor answered. Appearance was entered for Brown, but he never answered. Decrees *pro confesso* were taken in due time against both. Subsequently an order was entered making these decrees absolute. This was on December 2, 1902. The record before us shows that there was then testimony taken in January of 1893; but there is nothing to show by what order, or upon what authority, it was taken. We are informed orally, however, that the court below required some testimony to be taken in support of the bill of complaint before it would make any final decree. In this testimony the allegations of the bill are substantially proved. In fact, the principal witness on behalf of the complainant is the defendant and appellee, Elsie A. Scott, her daughter, who proved the pay-

ment of the $400 and other payments also by her mother, and
who seems to be willing that her mother should have the relief
prayed for by her.    It is shown, also, that, at the time of the tak-
ing of the testimony, the property was worth about $3,000; but
there is no satisfactory testimony as to the amount paid by Sam-
uel Wills at the time of his purchase in 1877, unless we accept as
such a statement by one of the witnesses; apparently an entirely
disinterested person, to the effect that about the time of the pur-
chase Samuel Wills came to him to borrow some money from
him, and stated to him that he had bought a house on Madison
street, on which the property in controversy is located, for twen-
ty-three hundred dollars ($2,300).

At the final hearing the court below dismissed the bill of com-
plaint on May 4, 1903; and the complainant has brought the
cause to this court by appeal.

*Mr. M. F. Mangan, Mr. Joseph H. Stewart, Mr. Wilton J.
Lambert,* and *Mr. D. W. Baker* for the appellant.

*Mr. Henry E. Davis* for the appellee Shedrich D. Brown.

There was no appearance for the appellee Elsie A. Scott.

Mr. Justice MORRIS delivered the opinion of the Court:

Passing over, as unimportant in the determination of the mer-
its of this case, some questions of pleading and practice that pre-
sent themselves at the threshold, we are of opinion that neither
the bill of complaint, nor the testimony taken in support of it,
shows sufficient ground for the declaration of a resulting trust in
this case in favor of the complainant for the portion of the pur-
chase money of the property in controversy shown to have been
paid by her.    For the establishment of such a resulting trust it
must be clearly shown that the whole purchase money was paid
by the person seeking to have such trust declared, or that the
purchase was of some definite interest or determinate aliquot
part of the property.    In the absence of any satisfactory proof

of the amount of the purchase money in this case, and therefore of proof as to the proportion of the sum of $400 advanced by the complainant to the whole purchase money, it is impossible to establish a resulting trust in any part or share of the property in favor of the complainant.

But while the bill of complaint and the testimony are insufficient to establish a resulting trust, we are likewise of opinion that there is sufficient allegation and ample proof of facts in this case to show an equitable lien on this property in favor of this complainant to the amount of $400. It has been broadly held in some cases that an equitable lien will be declared to exist when there are such relations between the parties as will make it right and just to declare the lien. *Kelly* v. *Kelly,* 54 Mich. 30, 19 N. W. 580; *Perry* v. *Board of Missions,* 102 N. Y. 99, 6 N. E. 116; *Rucker* v. *Abell,* 8 B. Mon. 566, 48 Am. Dec. 406; *Gavin* v. *Carling,* 55 Md. 530; *Society of Shakers* v. *Watson,* 15 C. C. A. 632, 37 U. S. App. 141, 68 Fed. 730. It is not necessary for us to go that far in the present case. For here an express agreement is shown, although not in writing, whereby, in consideration of the contribution by the complainant of the sum of $400 to the purchase money of a certain piece of property, she was promised by the purchaser that she should have practically a life estate in the premises, in common with the purchaser; and, upon that inducement and with that agreement between herself and her son, the purchaser, she paid her share of the money and entered into the possession of the property, and retained that possession until she was evicted under what she would seem to regard as false representations.

It seems to us that it would be difficult to conceive a case, apart from one of express agreement, in which a court of equity would be more justified in declaring an equitable lien. Indeed, we find very little difference in principle between this case and one of express agreement, in consideration of a specified sum of money, to put a party in possession for life, with possession thereupon taken. The agreement here was substantially an express agreement; and while, under the circumstances, it may have been insufficient to create either a resulting trust, or such an es-

tate for life as the law will recognize, the case presented would become one of the grossest injustice if a court of equity will permit this complainant in her remarkably advanced years to lose the benefit of the money which she put into this property, now enjoyed at her expense by a stranger to her blood.

It would appear that it was the theory of a resulting trust which was mainly, if not exclusively, presented to the court below, and for the failure to establish which the learned justice who held that court dismissed the bill of complaint. In so ruling we think he was right. But the theory of an equitable lien was evidently ignored in the case, and, inasmuch as that theory is fully substantiated by the record, we think there was error in the dismissal of the bill.

We are of opinion that the decree appealed from should be reversed, with costs; and that the cause should be remanded to the Supreme Court of the District, with directions to enter a decree establishing an equitable lien upon the property mentioned in the proceedings to the amount of $400, and for such further proceedings, orders, and decrees as may be right and proper to enforce the same. And it is so ordered.                    *Reversed.*