## HALIDAY v. HALIDAY.

(Court of Appeals of District of Columbia. Submitted January 8, 1926. Decided March 1, 1926.)

No. 4284.

**1. Trusts ⬅62.**

Implied or resulting trusts are recognized in District of Columbia, in view of Code 1924, § 1118.

**2. Trusts ⬅88.**

Implied or resulting trusts may be established by parol evidence.

**3. Trusts ⬅87.**

Evidence of acts and conversations of parties after creating alleged resulting trust in realty *held* admissible as evidence of intent.

**4. Trusts ⬅77—That cestui que trust did not pay entire purchase price immediately on purchase held not to prevent trust from resulting, where obligation to make full payment was assumed.**

That one claiming a resulting trust in realty, alleged to have been purchased under agreement that he should have rents during life, paid only part of consideration when pur-

chase was made and balance in installments, which included rents accruing from time to time, *held* not to prevent trust from resulting; obligation to make deferred payments having been assumed when purchase was made.

**5. Trusts ⬅77—Rule that trust does not result where payment is made after transfer does not apply, where cestui 'que trust assumes obligation to make deferred payments at time of transfer.**

Generally resulting trust does not arise where payment is made by funds furnished after transfer, but such rule does not apply where cestui que trust, at time of transfer, assumes obligation to make such deferred payments.

**6. Trusts ⬅86—Conveyance in trust for purchaser's children was not presumed conveyance of both legal and equitable titles, as against claim of resulting trust.**

Conveyance of realty in trust for all of purchaser's children *held* not, as matter of law, presumed conveyance of both legal and equitable titles, as against claim of resulting trust.

**7. Trusts ⬅82.**

Whether purchase in name of wife or child should be treated as advancement, and not as resulting trust, is question of intent.

**8. Trusts ⬅89(1)—Evidence held to warrant finding of resulting trust in favor of purchaser of property conveyed to trustee for his children.**

Evidence *held* to warrant finding of resulting trust in favor of purchaser of property, who took title in name of trustee for his children under alleged agreement that he should have rents during his life.

**9. Trusts ⬅365(4)—Suit to establish resulting trust in realty, instituted a little more than a year after trustee expressly disavowed trust, held not barred by laches.**

Suit to establish resulting trust in realty, instituted a little more than a year after trustee expressly disavowed trust, *held* not barred by laches, though 12 years had elapsed since transfer involved.

**10. Equity ⬅87(1).**

In District of Columbia, equity, on question of laches, does not follow statute of limitations, but considers particular circumstances in each case.

**11. Trusts ⬅365(4)—Time, lapse of which constitutes laches, barring establishment of resulting trust, begins to run from trustee's disavowal of trust to knowledge of cestui que trust.**

Lapse of time, which will constitute laches barring relief in suit to establish resulting trust, begins to run from time trust is disavowed by trustee to knowledge of cestui que trust.

Appeal from Supreme Court of District of Columbia.

Suit by James B. Haliday against Raymond Earl Haliday. Decree for plaintiff. Defendant appeals. Affirmed.

F. E. Elder, of Washington, D. C., for appellant.

J. A. O'Shea, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and GRAHAM, Presiding Judge of the United States Court of Customs Appeals.

GRAHAM, Acting Associate Justice. The appellee filed his bill in equity against appellant on March 23, 1922, praying that a resulting trust in his favor might be declared in certain real estate, to wit: Lots 34 and 35 of Schneider's subdivision in Square 79 as per plat recorded in Book 20, page 27, of the surveyor's office in the District of Columbia, and for other relief. Appellant answered, denying the equities of appellee. The court below, after hearing, entered a decree granting the relief prayed, and from that decree appellant brings the cause here.

The record shows that on the 2d day of August, 1910, James B. Haliday, a widower, about 67 years of age, was stationed at Ft. Sam Houston, Tex., as a superintendent of buildings, for which he received $150 a month. His wife died in 1908. At the time of her death she left approximately $400 in money, which she had saved from his salary. In 1910 Haliday returned to Washington, and while there, in company with one Andrew Graham, a real estate broker, looked at the properties in question here with the idea of buying them. He then talked with some, if not all, of his children, eight in number, about his proposed purchase, and particularly with the appellant, whom he asked to act as his trustee in effecting said purchase, to which appellant consented. Appellee then agreed with Graham as to the purchase price, which was to be $5,500, and testifies that he told the said Graham, at the time, he wanted the rents as long as he lived. Appellee testifies that his purpose in buying these properties was to have a home in his old age, and that, when he asked his son to act as trustee, it was expressly understood and agreed that the purchase was being made for all of his children, but that appellee was to have the rent as long as he lived.

Appellee then returned to his work, and sent various sums of money to the appellant and to his daughter, Anna J. Dowden, to be applied on the purchase of the properties in question. These sums were paid to Graham, and thereafter, on August 2, 1910, Graham procured a deed to be made from the owners

of the property to the appellant as trustee, which deed included the following habendum clause:

"First. In trust to hold said parcels of land and premises, subject to the power of sale and disposition hereinafter granted, for the use and benefit of Raymond E. Haliday, William A. Haliday, Harry C. Haliday, Welford Haliday, Nettie Dowden, Edith M. Fowler, Florence E. Matter, and Grace M. Barnard, hereinafter called the said beneficiaries, in fee simple, share and share alike, as tenants in common.

"Second. Upon the further trust, to sell, lease, or incumber said parcels of land and premises, or any part thereof, upon such terms and conditions, in such manner, quality, and quantity of estate, and by such forms of instrument, as the party hereto of the second part may, in his discretion, from time to time, deem most for the benefit of the said beneficiaries, their respective heirs or assigns, and to convey the said parcels of land, or any part thereof, by good and proper conveyance according to the nature of the estate, either in fee simple or by deed of trust or mortgage, or otherwise, and without any obligation on the part of any purchaser, or person lending money, to see to the application of the purchase money or money lent."

This deed was made and recorded in the absence of either party hereto, and neither of them knew of its provisions until a considerable period thereafter. Evidently its language was framed by the real estate broker.

At the time the deed was executed, in addition to the cash payment made for the appellee, a trust deed was made to secure a note or notes to the Riggs National Bank of Washington, securing a loan of $4,000, which was executed by the appellant as trustee; in 1912 or 1913, this loan was replaced by one by the Perpetual Building Association of Washington, which was fully paid off and released November 10, 1919. Some time thereafter appellant sold one of the properties for $4,500, which he now has, and was at the time of filing the bill herein about to sell the other. All the payments upon the property were made by remittances from the appellee and from the rents which were collected from the property. The appellee remarried in 1916, and returned to Washington, with his wife, in 1920. Through his son, Welford Haliday, appellee then requested appellant to pay him the rents from the properties, and for six months thereafter this was done, appellee receiving in all $220 therefrom. In February, 1921, appellant in-

formed appellee he could pay him no more rent, because the other children had notified him not to do so, and thereafter appellee filed his bill herein.

In addition to the testimony of the appellee, as heretofore stated, on the hearing, his daughter, Anna J. Dowden, who transacted much of the business of making payments upon the property for him, corroborates him in most essential particulars.

A son, James Welford Haliday, also stated that it was his personal opinion his father was to get the rent, and that when he asked his brother, the appellant, to pay the rent to his father, the appellant said he was willing to do so, if it was agreeable with the rest. The wife of the appellee, Mamie Haliday, also testified that, in a conversation which she overheard between the appellee and the appellant, the appellant admitted there was an agreement such as the appellee alleges in his bill of complaint. A daughter, Edith M. Fowler, testified on behalf of the appellant that her father had stated, in her presence, that he was going to use some money left by his deceased wife, and some of his own, to buy these houses for his children, and that he never, at any time, said in her presence that the rents were to be paid to him, but did say that they were to go to help pay for the houses. The appellant stated that the appellee had proposed to him to purchase his property as a gift to his children, and desired to appoint him trustee, and that the rents and profits of the property would be applied in the payment thereof, but said nothing, at that time, about what disposition of the rents and profits should be made after the property was paid for; that the dispute between his father and the other heirs relative to the payment of rent began about a year after the appellee married his present wife.

[1, 2] Implied or resulting trusts are recognized by the law in force in the District of Columbia. Section 1118, Code D. C. 1924. And it is well settled in this jurisdiction that such trusts may be established by parole evidence. Cohen v. Cohen, 1 App. D. C. 240; Cooksey v. Bryan, 2 App. D. C. 557; Smithsonian Institution v. Meech, 18 S. Ct. 396, 169 U. S. 398, 42 L. Ed. 793. In fact, this is the rule in most jurisdictions. Perry on Trusts, § 137; Sidmouth v. Sidmouth, 2 Beav. 455; Williard v. Williard, 56 Pa. 119; Deck v. Tabler, 23 S. E. 721, 41 W. Va. 332, 56 Am. St. Rep. 837; Jeans v. Cooke, 24 Beav. 521; Redington v. Redington, 3 Ridg. 196.

[3] On the trial, testimony was offered and admitted, over objections, of certain acts and conversations of the parties after the time the alleged trust was created. This testimony was not admitted or considered as tending to establish a trust, but only to throw such light upon the intent of the parties as might be furnished by their subsequent acts and statements. For this purpose such evidence has been generally held to be admissible. The modus vivendi of the parties, since the transfer, is an indication of their intent. Ward v. Ward, 22 A. 149, 59 Conn. 188, 196. There was no error in this respect.

[4, 5] It is contended by appellant that the evidence as shown in the record establishes the fact that the entire consideration for the property sought to be charged with a trust was not paid at the time of purchase, but in installments thereafter, including rents accruing from time to time, and that the weight of authority is to the effect that this cannot establish a resulting trust. The general rule was stated by this court in Long v. Scott, 24 App. D. C. 1. It was there said that, to establish a resulting trust, it must be clearly shown that the whole purchase money was paid by the person seeking to have such trust declared, or that the purchase was of some definite or determinate aliquot part of the property. While the rule is that a resulting trust cannot be established by the payment of funds furnished after the transfer, it has been, we think, generally held that this rule does not include cases where such payments are made in pursuance of a contract made at the time of purchase. In Ducie v. Ford, 11 S. Ct. 417, 138 U. S. 587, 34 L. Ed. 1091, the rule is thus stated: "The whole consideration must have been paid *or secured* at the time of * * * purchase." Where property has been purchased by the cestui que trust, and a note has been given for the purchase price, which is thereafter paid by him, a resulting trust is created. Lewis v. Wells (D. C.) 85 F. 896, 903. To the same effect is Brainard v. Buck, 22 S. Ct. 458, 184 U. S. 99, 46 L. Ed. 449. If payments are made in pursuance of the contract under which the title was acquired, this will be sufficient to establish a resulting . trust. Gilchrist v. Brown, 30 A. 839, 165 Pa. 275. And it is not material in such cases whether the obligation for deferred payments is made by the cestui que trust or the trustee, if the payments are made by the cestui. Levy v. Mitchell, 114 S. W. 172, 52 Tex. Civ. App. 189; Gray v. Jordan, 32 A. 793, 87 Me. 140.

In the case before us, the evidence shows the complainant paid, out of his own funds, the entire purchase price, including all payments on the notes given by the trustee therefor. Part of this, it is true, consisted of rents derived from the property. But if an arrangement was made by the parties, at the time of purchase, as alleged by the appellee, these rents were as much the property of the appellee as any funds derived from other sources.

[6, 7]. It is argued by the appellant that the conveyance in question, being to the children of appellant, must, as a matter of law, be presumed to be a conveyance of both the legal and equitable titles, and not a resulting trust. It is true that the rule has been announced, in many instances, that a conveyance to one whom the alleged cestui que trust was under obligation, legal or moral, to provide for, should be treated as an advancement, and not as a resulting trust, and that such relationship of the buyer and the grantee is prima facie proof of such advancement. But we believe the more modern view of this subject is that tersely stated by Perry on Trusts, § 147:

"Whether a purchase in the name of a wife or child is an advancement or not is a question of pure intention, though presumed in the first place to be a provision and settlement; therefore any antecedent or contemporaneous act or facts may be received, either to rebut or support the presumption."

And such is the rule in this jurisdiction. McCartney v. Fletcher, 11 App. D. C. 1, 9. After there is sufficient evidence to rebut the presumption of an advancement, then the evidence should be examined pro and con to establish what the intention was. Deck v. Tabler, 23 S. E. 721, 41 W. Va. 332, 56 Am. St. Rep. 837. A leading case upon this subject is Skahen v. Irving, 69 N. E. 510, 513, 206 Ill. 597, 607. It is there said:

"While it is true that the placing of property by a husband or father in the name of a wife or child is ordinarily presumed to be an advancement or settlement, yet in a case like the one at bar, where the record discloses that the earnings and income were large and the investments of an unusual character, and where to indulge the presumption that the placing of the properties in the name of the wife or child was a gift would have the effect of stripping the husband and father of all his property and leave him at an advanced age penniless, and at the same time leave other children, having equal claims upon him, wholly without recognition or a prospect of receiving any portion of his estate, such facts, alone, strongly tend to rebut such presumption."

[8] It only remains to be seen whether the facts as shown by this record were such as to justify the decree of the court below declaring a resulting trust. That the appellee intended to purchase this property for the ultimate benefit of his children, after his death, is conceded. Whether an arrangement was made, at the time of purchase, that the appellee was to enjoy the rents and profits during his lifetime, is the only controversial matter. On the part of the appellee there was an express affirmance of such an agreement, and upon the part of the appellant a disavowal. The appellee is corroborated in his statements, to a large degree, by his daughter, Anna J. Dowden, who transacted much of the business. The appellant added much force to the contention of appellee when, at his request, after the premises were paid for, he paid appellee the rent arising from the premises, until stopped by the demands of some of those whom appellee had made the beneficiaries of his bounty by his purchase. In addition, the chancellor might well have in mind the advanced age of appellee, his financial condition, and the improbability of his appropriating his savings in his declining years, without hope of enjoyment of any part of the same during the balance of his life. While this court has said in Cohen v. Cohen, supra, that in such cases a resulting trust must be proved with clearness and certainty, it has been equally well said: "The law is content if, from a perusal of the entire record, the mind is sure that there was a distinct agreement as claimed." Smithsonian Institution v. Meech, 18 S. Ct. 396, 169 U. S. 398, 42 L. Ed. 793. The court below heard the witnesses and found that a resulting trust was established. We believe this finding should not be disturbed.

[9-11] Finally it is urged that relief in this case is barred by the laches of appellee, 12 years having elapsed between the execution of the deed in question and the filing of the bill herein. In some jurisdictions it has been held that equity will follow the statutes of limitation in such cases. But this has never been the rule in this jurisdiction. Whether the bar of laches may be set up will depend upon the particular circumstances in each case. Cohen v. Cohen, supra; Cooksey v. Bryan, 2 App. D. C. 557; Michoud v. Girod, 4 How. 503, 11 L. Ed. 1076; Prevost v. Gratz, 6 Wheat. 481, 5 L. Ed. 311; Lowrey v. Hawaii, 30 S. Ct. 209, 215 U. S. 554, 572, 54 L. Ed. 325. And, where time is important, it only begins to run from the time when the trust is disavowed by the trustee, which is fully and unequivocally made known to the cestui que trust. Oliver v. Piatt, 3 How. 333, 410, 11 L. Ed. 622; Crowley v. Crowley, 56 A. 190, 72 N. H. 241. In this case the appellant expressly disavowed the trust in a conversation with appellee, in Washington, in January or February, 1921, and the bill of complaint herein was filed March 23, 1922. Obviously this is an insufficient time to raise the bar of laches.

It follows that the decree of the court below should be, and is, affirmed, with costs.