**THIRD NATIONAL BANK IN NASH-VILLE, Plaintiff-Appellee,**

**v.**

**UNITED STATES of America, Defendant-Appellant.**

**No. 71-1478.**

United States Court of Appeals, Sixth Circuit.

Feb. 1, 1972.

Janet R. Spragens, Dept. of Justice, Tax Div., Washington, D. C., for defendant-appellant; Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Crombie J. D., Garrett, Attys. Tax Div., Dept. of Justice, Washington, D. C., on brief; Charles H. Anderson, U. S. Atty., Nashville, Tenn., of counsel.

Harlan Dodson, III, Nashville, Tenn., for plaintiff-appellee; Hooker, Keeble, Dodson & Harris, David M. Keeble, Nashville, Tenn., on brief.

Before PHILLIPS, Chief Judge, PECK, Circuit Judge, and McALLIS-TER, Senior Circuit Judge.

PER CURIAM.

This is an appeal from the decision of District Judge L. Clure Morton in favor of the taxpayer in an income tax refund case. We affirm.

The facts are undisputed. Following unsuccessful negotiations for an outright purchase, the Bank entered into a 25 year lease agreement covering property in downtown Nashville, Tennessee. The lease provided for annual payments of $5,000 during its term. The lessors had an option, during the first 24½ years, to require the Bank to purchase the property for $75,000; the Bank had an option, during the last six months, to purchase the property for the same price. The Bank was given extensive control over the property, including the right to demolish existing structures and construct new buildings. The Bank agreed to bear all costs of maintenance and to pay all taxes and insurance.

At the time this lease agreement was executed, there were three existing leases on the property. Over a one year period the Bank secured the early termination of these three leases. Shortly thereafter it demolished the existing structures and erected a new building on the site. The estimated useful life of the new building is 45 years.

The Bank amortized the lease termination costs over the remaining terms of the respective terminated leases, deducting the amortized amounts. Upon audit, the Internal Revenue Service disallowed these deductions. In a tax refund suit filed by the Bank, Judge Morton held that the termination costs were allocable to the new building and ruled that deductions for these costs were properly amortized over the life of the building.

There is no question that the termination costs were capital expenditures incurred by the Bank to carry out its expansion plans to tear down the structures on the land and erect a new building. The sole issue is whether such expenditures are allocable to the new building or to the land as a part of the basis.

■ Following the well-established rule that the costs of producing income are allocated to the property producing it, we agree with the District Court that the termination costs are allocable to the new building. Keiler v. United States, 285 F.Supp. 520 (W.D.Ky.1967), aff'd mem., 395 F.2d 991 (6th Cir. 1968); Business Real Estate Trust v. Commissioner, 25 B.T.A. 191 (1932).

The Government contends that Judge Morton implicitly found that for tax purposes the transaction was a sale rather than a lease, and urges that such a finding mandates allocation of the termination costs to the land. We discern no such finding in the decision of the District Court.[1] The transaction involved appears to be a good-faith, arms-length business deal. The Bank undertook to purchase the property. The owner refused to sell but agreed to a lease for twenty-five years. The $75,000 negotiated option price exceeded the Bank's original offer for an outright purchase. In order to exercise its option, the Bank must pay a consideration substantially in excess of the combined rental payments.

■ The Government further argues that under Treas.Reg. § 1.167(a) (4), any capital expenditure allocable to the new building must be amortized over the term of the lease rather than the longer useful life of the building.[2] Although

---

1. It is noted that the parties stipulated that the Bank "has not purchased the property."

2. In the proceedings in the District Court, the Government took alternative positions that the cost of securing early termina-

this argument may have merit, the decision of the District Court, insofar as its amortized costs over the life of the building, is less favorable to the taxpayer than that argued by the Government. Since the Bank did not cross-appeal, this issue is not before this court. We therefore do not reach this issue. *Cf.* Helvering v. Pfeiffer, 302 U.S. 247, 250–251, 58 S.Ct. 159, 82 L.Ed. 231 (1937); Reynolds Spring Co. v. L. A. Young Industries, Inc., 101 F.2d 257, 262 (6th Cir. 1939).

Affirmed.

tion of the leases should (1) be included in the cost of acquiring the land or (2) be amortized over the 45 year useful life of the building. Judge Morton adopted the latter position. Before this court, in its brief and at oral argument, the Government contends that the adopted position was erroneous.