Harry D. EDWARDS, Appellant,

v.

Meredith C. WOODS, Appellee.

No. 10502.

District of Columbia Court of Appeals.

Argued Nov. 16, 1976.

Decided April 28, 1978.

George H. Windsor, Washington, D. C., for appellant.

F. William Burke, Washington, D. C., for appellee.

Before KERN, YEAGLEY, and HARRIS, Associate Judges.

HARRIS, Associate Judge:

This action to recover possession of real property, see D.C.Code 1973, § 16–1501, involves an analysis of decades-old precedent on the law of purchase money resulting trusts in the context of casual contemporary life-styles. The trial judge made an effort to resolve equitably a confused situation arising from the actions of two people whose financial affairs were disordered and unconventional, as were other aspects of their lives. While we find the nature of the relief granted to be compatible with this jurisdiction's case law, we reverse in part and remand for the further factual findings which are necessary to permit the proper remedy.

Appellant Edwards is a self-employed artist, a maker of stained-glass windows. Appellee Woods, now employed elsewhere, was an airline stewardess when the events leading up to this suit occurred. They met, dated regularly, and eventually began living together. Their landlord decided to sell the building in which they shared an apartment, requiring them to move. While faced with that necessity, Edwards received an insurance check in settlement of an accident claim. He used those funds for a down payment on a Capitol Hill house. Major attractions of the house included store space on part of the first floor, where Edwards could make and sell his stained-glass creations, and a second-floor apartment which could be rented. Woods signed the purchase contract, and title was placed in her name. She assumed the first deed of trust and also became liable on a second one.

The testimony is in conflict as to subsequent events. Woods claimed that Edwards had given her the money for the down payment as a gift. Edwards claimed that Woods took title in her name solely because she was regularly employed and therefore was better able to obtain financing. He also asserted that Woods agreed that he was to receive title after the second-story apartment had been renovated and rented. Two of the parties' friends gave testimony tending to support Edwards' version. Further, the real estate agent who handled the transaction testified that Edwards had little chance of obtaining credit, and that people who do not want their true property ownership interests known often have title taken in another's name. Edwards fell within such a category, for he was divorced, was responsible for the support of a child, and did not want to have property available to satisfy claims against him.

Evidence of the parties' financial dealings after they began living in the house is contradictory and confusing.[1] Payments on the mortgages were made by checks drawn upon Woods' account, and she testified that she made most of the payments. Edwards testified that his dwellingmate made such payments as loans to him. He produced rent checks which named him as the payee after he had renovated the second-story apartment. He also testified that he did not have a separate checking account, and hence used the account of Woods. In 1973 and 1974, Woods reported the rent as taxable income on her personal income tax returns, and from 1972 to 1974 she claimed as deductions the mortgage interest, property taxes, and depreciation. Edwards did not file tax returns for those years.

The relationship between the parties eventually cooled, and Woods moved out. Some time after her departure, Woods gave Edwards her key to the house. Once she came back with a locksmith, intending to change the locks, but Edwards returned before the work was finished. He then had different locks installed. Edwards later de-

---

1. Evidence as to the parties' conduct after the creation of a resulting trust (as occurred here) is admissible for whatever light it might shed on their intent at the time of the disputed transaction. *Haliday v. Haliday*, 56 App.D.C. 179, 182, 11 F.2d 565, 568 (1926).

cided to refinance the house and unsuccessfully tried to induce Woods to convey the title to him. The friction between the parties ultimately led them to court, where each claimed sole ownership of the house.

Although the trial court found that a resulting trust had not been established in favor of Edwards, in an effort to reach an equitable result it granted half of each party's prayer and ruled that they jointly own the property. No allocation was made of their respective ownership interests. Edwards appealed; Woods did not.

██ Woods advances several affirmative challenges to the trial court's judgment, but, as noted, she did not file an appeal. *See* D.C.App.R. 4. Because of that fact, she may not attack the judgment in this court, and may only defend those aspects of the judgment which favored her. *See United States v. Reliable Transfer Co.*, 421 U.S. 397, 401 n.2, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975); *Swarb v. Lennox*, 405 U.S. 191, 201, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972); *Porter v. Straughters*, D.C.Mun. App., 86 A.2d 410, 411 (1952). In pursuing her defense on this appeal, Woods is free to urge a rationale different from that utilized by the trial court. *See Morley Construction Co. v. Maryland Casualty Co.*, 300 U.S. 185, 191, 57 S.Ct. 325, 81 L.Ed. 593 (1937); *United Optical Workers Union Local 408 v. Sterling Optical Co.*, 500 F.2d 220, 224 (2d Cir. 1974). The Supreme Court has stated specifically that the cross-appeal rule is a rule of practice which may be dispensed with under appropriate circumstances. *See Langnes v. Green*, 282 U.S. 531, 538, 51 S.Ct. 243, 75 L.Ed. 520 (1931). *See also United Optical Workers v. Sterling Optical Co., supra,* at 224; 9 Moore's Federal Practice § 204.11[5], at 947–48 (2d ed. 1975). The rule, however, is well established and should not be discarded lightly. We deviate from it here only to the extent necessitated by justice and the circumstances of this case, to allow the trial court to make the more specific findings of fact which are required where a resulting trust exists.

██ Edwards' principal contention is that the trial court's factual findings are

clearly erroneous. To make such a challenge successfully, an appellant must leave this court, after we have studied all of the evidence, with the "definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Kidwell & Kidwell, Inc. v. W. T. Galliher & Bro., Inc.,* D.C.App., 282 A.2d 575, 576 (1971); *Voight & McMakin Air Conditioning, Inc. v. Property Redevelopment Corp.,* D.C.App., 276 A.2d 239, 241 (1971). Although each party sought to prove that he or she was the sole owner, the record compels the inference that they intended to share ownership. For example, Edwards supplied the funds for the down payment, while Woods testified that she made the payments on the deeds of trust. The trial court could and did infer that each intended to receive some vested property interest in return for his or her contributions. We could not call such a conclusion either "clearly erroneous" [*see* Super.Ct. Civ.R. 52(a)] or "plainly wrong" [*see* D.C. Code 1973, § 17–305(a)].

██ The record, however, fails to support the trial court's finding that the parties did not intend in effect to establish a resulting trust. A resulting trust is a property relationship designed to effectuate the parties' intent when one party takes title to property for which another has furnished the consideration. *See Kosters v. Hoover,* 69 App.D.C. 66, 69, 98 F.2d 595, 598 (1938); *Taylor v. Mercantile Safe Deposit and Trust Co.,* 269 Md. 531, 307 A.2d 670, 674 (1973); D. Dobbs, Remedies 240–41 (1973). It is an equitable remedy which must be applied in the instant case to effectuate justice, as formal record title is held by only one of the two parties who share ownership interests in the property. We believe the trial court meant that Woods did not intend for Edwards to be the sole owner. However, there may be a resulting trust of a partial interest in property. *See Long v. Scott,* 24 App.D.C. 1, 4–5 (1904); Restatement (Second) of Trusts § 454 (1959). The trial court apparently concluded erroneously that a resulting trust must be an all-or-

nothing proposition. We interpret the trial court's ruling as no more than a determination that Woods did not intend to give Edwards a beneficial interest in the entire property. Viewed as such, the court's conclusion was really a finding of fact flavored with legal terminology. *See Solway Metal Sales, Ltd. v. Baltimore & Ohio Railroad,* 120 U.S.App.D.C. 183, 184, 344 F.2d 568, 569 (1965). That finding of fact (*i. e.,* that Edwards was not meant to be the sole owner) is not clearly erroneous.[2]

The record, however, contains no basis for determining the proportions of the parties' respective interests in the property, and the case accordingly must be remanded for further findings and a new conclusion on this point. If the parties intended each to have equal (or disproportionate) shares, that intent should be recognized. As we have said, a purchase money resulting trust is a means to enforce the parties' intent. If their intent cannot be found, a resulting trust must be recognized in Edwards' favor in the same proportion as the amount of consideration furnished by him. *See* Restatement (Second) of Trusts, *supra,* § 454.

The payments of the notes securing the deeds of trust should be included in the trial court's determination of the parties' relative contributions. *Cf. Haliday v. Haliday,* 56 App.D.C. 179, 182, 11 F.2d 565, 568 (1926)

(such payments are sufficient to create a resulting trust). The parties' finances, however, appear to be quite disordered.[3] If the evidence on remand is inadequate to prove what proportionate share of the total payments Edwards made, he will be entitled to a lien on the property to the extent of the value of the contributions he can prove. *See Long v. Scott, supra,* at 5–6.[4]

A person seeking to prove a resulting trust must demonstrate his case by clear and convincing evidence. *Haliday v. Haliday, supra,* 56 App.D.C. at 183, 11 F.2d at 569; *Cohen v. Cohen,* 1 App.D.C. 240, 244 (1893); *Hill v. Bowen,* 8 Ill.2d 527, 134 N.E.2d 769, 772 (1956); *Battle v. Allen,* 250 Md. 672, 245 A.2d 590, 591 (1968); Restatement (Second) of Trusts, *supra,* § 458. Such a strict requirement is intended (and is necessary) to protect the sanctity of record titles and to prevent the defrauding of creditors. *See Battle v. Allen, supra,* 245 A.2d at 591. On remand, Edwards will be obliged to carry this burden of proof in order to show what proportional interest the parties intended for him to have in the property. If he cannot carry the burden of proving the proportional interest he was to have, he will have to meet a comparable burden in proving the extent of the contributions for which he should have an equitable dollar-figure lien.[5]

---

2. If our interpretation is incorrect, the trial court will have an opportunity to clarify the question on remand.

3. This factor leads us to observe that the case appears to be uniquely appropriate for settlement, rather than further litigation, on remand.

4. The record indicates that Edwards did a considerable amount of personal work in the renovation process. There would appear to be no reason for the trial court not to determine the value thereof in deciding either the proportionate share of Edwards' interest in the property as a whole or the value of his equitable lien. *See Fulp v. Fulp,* 264 N.C. 20, 140 S.E.2d 708, 713 (1965); *Iverson v. Iverson,* 87 S.D. 628, 213 N.W.2d 708, 711 (1973).

5. Appellant Edwards also contends that the Statute of Frauds, D.C.Code 1973, § 28–3503, does not apply to resulting trusts, and that the court thus may disregard the documentary form of the transaction in ascertaining whether

a resulting trust exists. It is true that the Statute of Frauds does not apply to resulting trusts. *See Smithsonian Institution v. Meech,* 169 U.S. 398, 407, 18 S.Ct. 396, 42 L.Ed. 398 (1898); *Haliday v. Haliday, supra,* 56 App.D.C. at 181, 11 F.2d at 567; *Dahlgren v. Dahlgren,* 55 App.D.C. 52, 55, 1 F.2d 755, 758, *cert. denied,* 266 U.S. 626, 45 S.Ct. 125, 69 L.Ed. 475 (1924); Restatement (Second) of Trusts, *supra,* § 406. They come within § 28–3503's exception for trusts "aris[ing] or result[ing] by operation of law." *See Smithsonian Institution v. Meech, supra.* The exception has existed since the enactment of the first Statute of Frauds three centuries ago [29 Car. 2, c. 3 (1677)], and is universally recognized. *See* G. Bogert & G. Bogert, The Law of Trusts and Trustees § 67 (2d ed. 1965). However, while Edwards correctly advances such a proposition, his challenge to the trial court's ruling is invalid since the trial court received nondocumentary evidence showing that a resulting trust had been established.

*Affirmed in part, reversed in part, and remanded.*

YEAGLEY, Associate Judge, dissenting:

Appellee Woods did not cross-appeal. The majority's disposition of this case, making it possible for the appellee to improve her position, vitiates the cross-appeal rule in this jurisdiction and remands the case under circumstances in which we should finally and equitably resolve this complex litigation.

Not having appealed, appellee Woods must be held to have accepted the trial court's resolution of the matter, pursuant to which she was held to be a joint owner of the disputed property. As such, and as the majority recognizes with convincing citation (*see* page 783, *supra*), she cannot attack the judgment rendered below, but can only defend it against appellant Edwards' attacks. In her defense of the judgment, however, appellee can urge any rationale or justification "as long as [her] attack will, if upheld result merely in affirmance of the judgment." *Jaffke v. Dunham*, 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957).

Of the cases cited by the majority, only one permitted affirmative relief for the appellee and that was a case in admiralty. *Langnes v. Green*, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520 (1931). Although the Court approached the question of appellee's rights as being in a case brought up on certiorari from the circuit rather than a pure admiralty appeal, it observed, "[o]n appeal in admiralty, there is a trial de novo." *Id.* at 536, 51 S.Ct. at 245.

Six years later in 1937, a somewhat new Supreme Court in considering the question began, "[t]he power of an appellate court to modify a decree in equity for the benefit of an appellee in the absence of a cross-appeal is here to be admeasured." In resolving the issue against the appellee, the Court said:

Without a cross-appeal, an appellee may "urge in support of a decree any matter appearing in the record although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it" *United States v. American Railway Express Co.*, 265 U.S. 425, 435, [44 S.Ct. 560, 68 L.Ed. 1087]. What he may not do in the absence of a cross-appeal is to "attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below." *Ibid.* The rule is inveterate and certain. . . . Findings may be revised at the instance of an appellant, if they are against the weight of evidence, where the case is one in equity. This does not mean that they are subject to like revision in behalf of appellees, at all events in circumstances where a revision of the findings carries with it as an incident a revision of the judgment. There is no need at this time to fix the limits of the rule more sharply. "Where each party appeals each may assign error, but where only one party appeals the other is bound by the decree in the court below, and he cannot assign error in the appellate court, nor can he be heard if the proceedings in the appeal are correct, except in support of the decree from which the appeal of the other party is taken." [*Morley Construction Co. v. Maryland Casualty Co.*, 300 U.S. 185, 191–92, 57 S.Ct. 325, 327, 81 L.Ed. 593 (1937) (citations omitted).]

More recently, in a case cited by the majority, the Second Circuit refused to reverse an erroneous judgment of the district court in an action to compel arbitration. The court said:

Were the issue before us we would have no difficulty holding that the district court erred in declaring Article XXVIII void since the validity of Article XXVIII under section 8(e) is an issue lying initially in the exclusive province of the arbitrator. However, we have no power to pass on this question because of the failure of the Union to appeal. [*United Optical Workers Union Local 408 v. Sterling Optical Co., Inc.*, 500 F.2d 220, 223–24 (2d Cir. 1974).]

After a brief discussion, the court concluded:

> It may well be that the cross-appeal rule is a rule of practice, see *Langnes v. Green*, 282 U.S. 531, 538, 51 S.Ct. 243, 75 L.Ed. 520 (1931), which we may dispense with in an appropriate case. . . .
> But the present case is not one calling for an exception to a rule so well-established and of such long usage. [*Id.* at 224 (citation omitted.]

The command of the majority here in remanding, that there be "further findings and a new conclusion," based on the dollar contribution made by each party, requires a full reconsideration in which the appellee may enlarge her half interest in the property and thereby obtain more than a mere affirmance. She can emerge in a much better position as a result of her adversary's appeal.

The majority justifies this by deeming the cross-appeal rule "a rule of practice which may be dispensed with under appropriate circumstances," citing *Langnes v. Green, supra.* I believe that we should follow the current majority view that the rule is a jurisdictional requirement, under which the question of enlarging appellee's rights is not properly before this court. *See also, e. g., Gomez v. Wilson*, 155 U.S.App. D.C. 242, 245 n.10, 477 F.2d 411, 414 n.10 (1973); *Third National Bank in Nashville v. United States*, 454 F.2d 689, 690–91 (6th Cir. 1972); *Jamesbury Corp. v. Worcester Valve Co.*, 443 F.2d 205, 208 n.3 (1st Cir. 1971).

Accordingly, if there is to be a remand, we should specify that appellant can be awarded no less upon reconsideration than was allocated to him after the matter was first tried; as to appellee, the judgment is final and her share cannot be enlarged because she did not appeal.

Although the trial court believed, erroneously, that it could not impose a partial resulting trust, the effect of its disposition was to do just that. The only stumbling block to accepting its decision is that the parties were held to be joint tenants instead of tenants in common. I would simply correct that conclusion here and affirm the trial court's determination of a one-half interest for each party, but as tenants in common.