**Daisy L. MAHAN, Plaintiff,**

v.

**Hymen H. TASH, Defendant.**

**Civ. A. No. 88–1398.**

United States District Court,
District of Columbia.

Jan. 30, 1989.

F. Robert Troll, Jr., Christopher Wheeler, Nylen & Gilmore, P.A., Calverton, Md., for plaintiff.

David P. Durbin, Jordan, Coyne, Savits & Lopata, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Plaintiff Daisy L. Mahan brings this action against defendant Hymen H. Tash for breach of fiduciary duty, breach of contract, trover and conversion, unjust enrichment, accounting and negligence in connection with defendant's purchase of 1000 shares of Fuji Photo Film Co. stock on behalf of plaintiff in 1964. Presently before us is defendant's Motion for Summary Judgment and plaintiff's Motion for Partial Summary Judgment. The issues have been extensively briefed. For the reasons that follow we grant defendant's motion and deny plaintiff's motion.

## Background

From at least 1964 until 1985, the firm of Sinrod and Tash provided plaintiff accounting and legal services in her business and personal affairs. In 1964 defendant Tash and his partner, Nathan Sinrod, while having lunch at plaintiff's business establishment, told plaintiff that they were going to purchase some stock of Fuji Photo Film Company ("Fuji"). Plaintiff Mahan and her business manager, Stella Cauble, remarked that they would also like to purchase some Fuji stock. Plaintiff Mahan paid defendant Tash $410.08 to purchase 1000 shares of Fuji Photo Film stock on her behalf. In return, she received a Declaration of Trust, which identified Tash as legal owner of 4,000 shares of Fugi stock. Tash, Sinrod, Cauble, and Mahan were identified as equitable owners of the 4,000 shares [1], in equal shares.

From 1965 until 1969 defendant forwarded to plaintiff four checks for dividends received on her share of the Fuji stock. For almost twenty years, plaintiff made no inquiries about the stock, which she considered "junk stock." In May of 1985, while reviewing the contents of her safe deposit box, plaintiff discovered the Declaration of Trust, prepared by defendant in 1964, and approximately 135 ADRs for Fuji Photo Film stock [2]. On May 16, 1985, plaintiff wrote to defendant asking him to check on the whereabouts of her Fuji stock referenced in the 1964 Declaration of Trust. Defendant responded that he could not find anything in what remained of his records concerning her Fuji stock. On October 7, 1986, counsel for plaintiff made a formal demand for delivery of the stock and for an accounting of all dividends and distributions. Defendant responded to the demand by informing plaintiff's counsel that the Fuji stock originally held for plaintiff was distributed many years ago.[3] This action ensued.

## Discussion

In his Motion for Summary Judgment, defendant raises the affirmative defenses of statute of limitations and laches. Although in some jurisdictions, equity will follow the statute of limitations in determining whether a claim is barred by laches, in this jurisdiction it has been uniformly held that "[w]hether the bar of laches may be set up will depend on the particular circumstances of each case." [4] *Haliday*, 11

---

1. In 1964, Japanese shares were not typically transferred to an individual's name or physically delivered to their legal owners. In this case, when plaintiff received the Declaration of Trust, she also received a copy of a letter from Carl M. Loeb, Rhoades & Co. addressed to defendant's broker, Jones, Kreeger & Co. This letter explained that the shares would be physically held in a depository account in the Chase Manhattan Bank, Tokyo, in a custodian account in the name of Carl M. Loeb, Rhoades & Co. (a clearing agent) on behalf of Jones, Kreeger & Co. (defendant's broker). *See* Defendant's Exhibit F attached to defendant's Motion for Summary Judgment.

   Beginning in July of 1969, it became possible to convert Japanese shares of Fuji Photo Film common stock into what are known as American Depository Receipts ("ADRs") for which certificates in an individual's name could be issued. *See* Affidavit of Leanne Barilla ("Barilla Affidavit") ¶ 9.

   According to defendant, defendant never held the certificates of the 4,000 shares of Fuji Photo Film stock, nor did he ever hold any ADRs that represented such stock. *See* Tash Deposition, Defendant's Exhibit B attached to defendant's Motion for Summary Judgment ("Exhibit B") at 9.

2. Whether these 135 ADRs represented the 1000 shares of Fuji stock that were purchased by defendant on plaintiff's behalf in 1964, or whether the ADRs represented another 1000 Fuji shares purchased by plaintiff in 1966 (through Nathan Sinrod, defendant's former partner), is a matter of considerable dispute.

3. According to defendant, around 1969 or 1970 he and Sinrod decided that they did not want to continue with the "penny-ante" stock, and they decided to sell their shares. Defendant's Exhibit B at 11–16. The record reflects that 2000 shares were sold at that time. *See* Defendant's Exhibit R. Because Mahan and Cauble did not want to sell their shares, control of their shares was allegedly transferred to them. *Defendant's Exhibit B* at 11–16. Cauble's share of the stock was thereafter held through Morgan Guarantee Trust Company of New York. *See* Mahan Deposition, Defendant's Exhibit A ("Defendant's Exhibit A") at 12, 35–37; Affidavit of Stella Cauble Interwies, Defendant's Exhibit T ¶ 2.

4. Because of the compelling nature of defendant's laches defense, we need not reach the statute of limitations defense.

F.2d at 567. Summary judgment is appropriate based on a laches defense where there are no genuine issues of material fact relating to either inexcusable delay or material prejudice and where the movant is entitled to judgment as a matter of law. *See Jeffries v. Chicago Transit Authority,* 770 F.2d 676, 679 (7th Cir.1985), *cert. denied,* 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986). We find that the circumstances of the instant case show that plaintiff is guilty of laches, and defendant is entitled to summary judgment.

Under the doctrine of laches, "equity will not aid a plaintiff whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant." *American University Park Citizens Association v. Burka,* 400 A.2d 737 (D.C.1979). "Laches will not provide a valid defense ... unless two tests are met, the defendant has been prejudiced 'by the delay and that delay was unreasonable." *Id.*

With respect to the element of delay, the threshold issue is when plaintiff could reasonably have asserted her claims so as to trigger the running of the time period for purposes of laches. Defendant argues that even though he cannot produce documentary evidence [5] affirmatively proving that he complied with his trust by transferring control of the stock to plaintiff, he is nevertheless entitled to summary judgment. He contends that assuming *arguendo* that the the Declaration of Trust continued in effect, the uncontested fact that he ceased to deliver any dividends from the stock to plaintiff after 1969 operated as an open disavowal and repudiation of the trust, which would commence the running of the time period for purposes of the statute of limitations and laches. In general, if there has been a termination or an open disavowal and repudiation of a trust, brought to the attention to the *cestui que trust,* or beneficiary, the time relevant to laches or a statute of limitations defense begins to run. *See Young v. Howard,* 120 F.2d 712, 713 (D.C.Cir.1941); *Haliday v. Haliday,* 11 F.2d 565, 569 (D.C.Cir.1926); *Watwood v. Yambrusic,* 389 A.2d 1362, 1363 (D.C. 1978).

Laches may be properly invoked when "the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum ... [and when] by reason of his [or her] delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned." *American University Park,* 400 A.2d at 742.

■ Plaintiff's knowledge of her rights is clear from the record. She had the Declaration of Trust in her possession from 1964 to 1986.[6] It is undisputed that the flow of Fuji dividends from defendant to plaintiff ceased in 1969. Repudiation of a trust can be made by actions as well as words,[7] and, in this case, a disavowal and repudiation of the trust would have occurred when the flow of dividends from the stock ceased after 1969.[8] Taking as true plaintiff's assertion that the 135 ADRs she found with the Trust in her safe deposit box in 1985 were representative of another 1000 shares of Fuji shares purchased by plaintiff in 1966, plaintiff would have been aware that she stopped receiving dividends from defendant relating to her 1964 purchase when she received dividends on the stock she purchased in 1966.[9]

---

5.  Defendant asserts that his inability to produce such documentary evidence results from plaintiff's unreasonable delay in bringing the instant action.

6.  Plaintiff's inquiry with the defendant after finally examining the document in 1985 indicates that, as an experienced business woman, she had no difficulty recognizing the significance of the document. Her only reason for failing to do so years earlier—that she had "forgotten" about her "junk stock", *see* Defendant's Exhibit A at 10–11—is indicative of her lack of diligence.

7.  *See generally,* Annot., "What Constitutes Sufficient Repudiation of Express Trust by Trustee to Cause Statue of limitations to Run," 54 A.L.R.2d 13; Am.Jur.2d (1957); *Trusts,* § 591.

8.  The Declaration of Trust makes no provision for the trustee to withhold, accumulate, or reinvest dividends. *See* Defendant's Exhibit D.

9.  Plaintiff, who kept ledgers of her personal finances, was financially sophisticated enough to have expected dividends or distributions from this block of stock. Fuji declared stock

All of the facts upon which her claims are based were known to plaintiff for 15 years prior to her filing suit. The Declaration of Trust was in her possession. From the inception of the trust she was apprised of the unusual nature of the stock and knew that it would not be physically held by defendant. She knew or should have known that she ceased receiving dividends from defendant after 1969.[10] Under the circumstances, we conclude that plaintiff's delay in asserting her claims was unreasonable.

Plaintiff's delay has also caused extreme prejudice to defendant. In the intervening years, records of defendant[11] and his brokerage accounts[12] have been lost or destroyed. In addition, Sinrod, who was defendant's partner and might have been able to testify as to the termination of the trust or who might have had records pertaining to the stock, has died.[13] All of these sources of evidence could have been perpetuated if plaintiff's claims had been timely raised. Because of the loss of evidence during the period of delay, it would be an injustice to defendant to permit plaintiff to now enforce the trust, whose value, according to plaintiff, has increased a hundredfold.[14]

█ In summary, no fair-minded jury could return a verdict for plaintiff on the basis of available evidence. Because defendant has been prejudiced in the defense of this case by plaintiff's unreasonable delay in bringing her action, we conclude that all of plaintiff's claims are barred by laches. Accordingly, plaintiff's Motion for Partial Summary judgment is denied.

An order consistent with the foregoing is entered this day.

## ORDER

Upon consideration of plaintiff's Motion for Partial Summary Judgment, defendant's Motion for Summary Judgment, the responses thereto, the entire record herein, and for the reasons set out in the accompa-

---

dividends in 1972 (twice), 1973 (twice), 1978, and 1983. *See* Affidavit of Keith N. Lanzoni, attached to plaintiff's Motion for Partial Summary Judgment ("Lanzoni Affidavit") ¶ 5. Plaintiff's personal ledger shows receipt of cash dividends in 1970, 1972, 1973, 1974, 1975, 1976, 1977, 1978, 1979, and 1980. *See* Defendant's Exhibit K. Plaintiff, who is now about 85 years old, does not remember who sent her dividends on Fuji after 1969. Defendant's Exhibit A at 46.

We note that plaintiff sold her 135 Fuji ADRs in 1985, *see* Defendant's Exhibit A at 29, apparently at a substantial profit.

**10.** Furthermore, defendant reminded plaintiff many times about the stock, while dining at plaintiff's business establishment, when he reminisced about the Fuji stock and expressed regret at having sold all of his around 1970. Yet plaintiff never bothered to inquire about her Fuji stock in the trust. In view of plaintiff's silence, defendant reasonably could have believed that his attempt to transfer control of the stock to plaintiff was successful, and that he was no longer plaintiff's trustee. It has been held that

When the trust relation is repudiated, or time and long acquiescence have obscured the nature and character of the trust, or the acts of the parties or other circumstances give rise to presumptions unfavorable to its continuance, in all such cases a court of equity will refuse relief on the ground of lapse of time, and its inability to do complete justice.

*Philippi v. Phillippe,* 115 U.S. 151, 157, 5 S.Ct. 1181, 1184, 29 L.Ed. 336 (1885). Such is the case here.

**11.** Through a combination of factors over the past 20 years—the firm of Sinrod & Tash moved three times, Nathan Sinrod died several years ago, defendant Tash retired thereafter, and as a tax attorney/accountant his records were generally retained only for 6 years—defendant cannot produce his own records.

**12.** In 1969, Tash's broker (Jones, Kreeger & Co.) was acquired by A.G. Edwards & Co., and his account was transferred to A.G. Edwards & Co., which later transferred the account to another brokerage house, Dominick & Dominick. The firms that remain in existence state that they are only required to retain records for 10 years, after which records are destroyed. They cannot reconstruct the trade history of plaintiff's Fuji stock based on available information. *See* Defendant's Exhibits V and W. Nor can they distinguish between 1000 shares of Fuji stock purchased in 1964 and 1000 shares of Fuji stock purchased in 1966. *See* Barilla Affidavit ¶ 6.

**13.** Plaintiff has stated that it was Sinrod, and not Tash, with whom she dealt for her business affairs. Defendant's Exhibit A at 10.

**14.** The value of plaintiff's $410.08 in 1964, would today be worth approximately $50,000.00, according to plaintiff. *See* Lanzoni Affidavit ¶ 7.

nying memorandum opinion, it is by the Court this 27th day of January, 1989

ORDERED that defendant's motion for leave to file a response to plaintiff's reply is denied; and it is

ORDERED that defendant's motion for summary judgment is granted; and it is

ORDERED that plaintiff's motion for partial summary judgment is denied; and it is

FURTHER ORDERED that defendant's application under Rule 56(f) is denied as moot.